# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KANSANS FOR CONSTITUTIONAL FREEDOM,<br><br>                    Plaintiff,<br><br>          v.<br><br>KRIS KOBACH, et al.,<br><br>                    Defendants. | Case No. 2:25-cv-2265-DDC-GEB |

## Defendants' Opposition to the
## Motion for Preliminary Injunction

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

**INTRODUCTION** ................................................................................................... 1

**BACKGROUND** ..................................................................................................... 1

   I.   Statutory Background on Section 25-4180 ...................................................... 1

   II.  Factual & Procedural Background ..................................................................... 4

**LEGAL STANDARD** .............................................................................................. 5

**ARGUMENT** ............................................................................................................ 6

   I.   Plaintiff's Claims Are Unripe Because the Commission Has Not
       Completed Its Review and Implementation of HB 2106 ................................. 6

   II.  Plaintiff Has Not Made a Clear Showing of Likely Success on the
       Merits of Its First and Fourteenth Amendment Claims ................................. 10

      A.   HB 2106 serves compelling state interests and is tailored
           to those interests ............................................................................... 10

      B.   HB 2106 includes a *mens rea* requirement before the State can
           impose criminal liability .................................................................... 13

      C.   HB 2106 is prospective and satisfies due process .................................. 15

   III. Plaintiff Cannot Make a Clear Showing of Irreparable Harm........................ 18

   IV. The Balance of Hardships and the Public Interest Favors Defendants ......... 19

**CONCLUSION** ...................................................................................................... 19

**CERTIFICATE OF SERVICE** ............................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ............................................................................................ 8

*Aid for Women v. Foulston,*
   441 F.3d 1101 (10th Cir. 2006) ...................................................................... 18

*Am. Petroleum Inst. v. E.P.A.,*
   683 F.3d 382 (D.C. Cir. 2012) ......................................................................... 8

*Bd. of Cnty. Comm'rs of Sumner Cnty. v. Bremby,*
   189 P.3d 494 (Kan. 2008) ................................................................................ 7

*Bernal v. Fainter,*
   467 U.S. 216 (1984) ........................................................................................ 11

*Bluman v. FEC,*
   800 F. Supp. 2d 281 (D.D.C. 2011) ................................................... 12, 14, 15

*Buckley v. Valeo,*
   424 U.S. 1 (1976) ............................................................................................ 12

*Cabell v. Chavez–Salido,*
   454 U.S. 432 (1982) ........................................................................................ 11

*Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.,*
   660 F. App'x 600 (10th Cir. 2016) ................................................................. 18

*Counterman v. Colorado,*
   600 U.S. 66 (2023) ................................................................................... 13, 14

*Foley v. Connelie,*
   435 U.S. 291 (1978) ........................................................................................ 11

*Fresh Vision OP, Inc. v. Skoglund,*
   2025 WL 26693 (D. Kan. Jan. 3, 2025) ........................................................... 6

*Gregory v. Ashcroft,*
   501 U.S. 452 (1991) ........................................................................................ 11

*Heideman v. S. Salt Lake City,*
   348 F.3d 1182 (10th Cir. 2003) ...................................................................... 18

*In re Hunt,*
   82 P.3d 861 (Kan. App. 2004) ........................................................................ 15

## TABLE OF AUTHORITIES (cont'd)

*In re Tax Appeal of Alsop Sand Co., Inc.*,
  962 P.2d 435 (Kan. 1998) ......................................................................... 15

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994) .................................................................................... 15

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ...................................................................................... 6

*Mi Familia Vota v. Hobbs*,
  977 F.3d 948 (9th Cir. 2020) ...................................................................... 9

*Moody v. NetChoice*, LLC,
  603 U.S 707 (2024) ....................................................................................... 6

*Nat'l Treasury Emps. Union v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996) ............................................................... 8, 9

*Nken v. Holder*,
  556 U.S. 418 (2009) ...................................................................................... 19

*OPAWL - Building AAPI Feminist Leadership v. Yost*,
  118 F.4th 770 (6th Cir. 2024) .................................................................... 12

*Prohibitory Amend. Cases*,
  24 Kan. 700 (1881) ...................................................................................... 12

*Pryor v. Sch. Dist. No. 1*,
  99 F.4th 1243 (10th Cir. 2024) .................................................................. 18

*Sampson v. Buescher*,
  625 F.3d. 1247 (10th Cir. 2010) ................................................................ 12

*State ex rel. Anderson v. Shanahan*,
  327 P.2d 1042 (Kan. 1958) ........................................................................ 12

*State v. Lewis*,
  953 P.2d 1016 (Kan. 1998) ........................................................................ 13

*U.S. Fid. & Guar. Co. v. United States*,
  209 U.S. 306 (1908) ...................................................................................... 17

*United States v. Rahimi*,
  602 U.S. 680 (2024) ....................................................................................... 6

*Winter v. Nat. Res. Def. Council*,
  555 U.S. 7 (2008) ........................................................................................... 5

## TABLE OF AUTHORITIES (cont'd)

*Wisconsin Gas Co. v. FERC,*
   758 F.2d 669 (D.C. Cir. 1985) .............................................................................. 18

### *Statutes*

52 U.S.C. § 30109 ........................................................................................................ 14

52 U.S.C. § 30109(a)(5)(A) .......................................................................................... 14

52 U.S.C. § 30109(d) .................................................................................................... 14

52 U.S.C. § 30121 ........................................................................................................ 14

Kan. Stat. Ann. § 21-5202(d)–(e) ............................................................................... 13

Kan. Stat. Ann. § 25-2119a(d) ................................................................................. 7, 9

Kan. Stat. Ann. § 25-4119a(b). ..................................................................................... 7

Kan. Stat. Ann. § 25-4119a(d). ..................................................................................... 7

Kan. Stat. Ann. § 25-4159 ............................................................................................. 7

Kan. Stat. Ann. § 25-4168 ............................................................................................. 4

Kan. Stat. Ann. § 25-4180
   §25-4180(a) ....................................................................................... 2, 3, 10, 16

   §25-4180(a)(1) ........................................................................................... 3, 16

   §25-4180(a)(2) ..................................................................................... 3, 16, 17

   §25-4180(b) ............................................................................................. 2, 3, 10

   §25-4180(c) ............................................................................................. 2, 4, 10

   §25-4180(d) ......................................................................................... 13, 14, 15

   §25-4180(d)(1) ..................................................................................... 2, 10, 18

   §25-4180(d)(2) ....................................................................................... 2, 4, 13

   §25-4180(d)(3) ....................................................................................... 2, 4, 13

   §25-4180(e) ....................................................................................................... 2

   §25-4180(e)(1)–(5) ........................................................................................... 3

   §25-4180(f) ................................................................................................... 2, 3

   §25-4180(g) ............................................................................... 3, 16, 17, 19

**TABLE OF AUTHORITIES (cont'd)**

§25-4180(h) ................................................................................................ 2, 4

§25-4180(i) ............................................................................................ 2, 4, 13

§25-4180(j) ..................................................................................................... 2

Kan. Stat. Ann. § 77-415 ............................................................................... 7

Kan. Stat. Ann. § 77-422 ............................................................................... 7

### Other Authorities

Americans for Public Trust, *Foreign Influence in State Ballot Issues: How Sixteen Thity Fund's Pipeline of Foreign Cash Impacts State Politics*, (Oct. 18, 2024) ..... 11

Constitutional Ballot Question, Receipts and Expenditure Reports, Kansas.gov ..... 7

Kan. Sess. Laws 1987, ch. 129, § 1 ........................................................... 1, 7

Receipts and Expenditures Report of Kansans for Constitutional Freedom, Inc., (Feb. 15, 2023) ........................................................................................ 11

**INTRODUCTION**

The constitution of the State of Kansas was ratified by the people on October 4, 1859. It begins: "We, the people of Kansas, grateful to Almighty God for our civil and religious privileges, in order to insure the full enjoyment of our rights as American citizens, do ordain and establish this constitution of the state of Kansas." Amendments to the constitution may be referred by the Kansas Legislature, but they must be approved by the people. This year, the Kansas Legislature adopted House Bill 2106, which prohibits the interference of foreign nationals in campaigns supporting or opposing amendments to the constitution, the state's foundational document. HB 2106 does this by preventing campaigns supporting or opposing amendments from accepting money from foreign nationals. Plaintiff—which raised and spent almost eleven million dollars in Kansas' last constitutional proposition election—argues that Kansas does not have the right to exclude foreign interference in its most foundational exercise of direct democracy. It asks this Court to take the extraordinary step of forbidding Kansas' chief campaign-finance regulator from taking any steps to implement this law, including the adoption of implementing regulations which the Kansas Governmental Ethics Commission has not yet begun to consider. While most of Plaintiff's claims are prudentially unripe, Plaintiff's core theory—that Kansas may not forbid foreign nationals from interfering in constitutional proposition elections—is flatly contrary to law and cannot support the injunction of HB 2106 before it has been implemented.

**BACKGROUND**

**I.    Statutory Background on Section 25-4180**

The State of Kansas has required campaign-finance reporting for advocacy promoting or opposing amendments to the Kansas Constitution for almost 40 years. *See* Kan. Sess. Laws 1987, ch. 129, § 1 (codified at Kan. Stat. Ann. § 25-4180). HB 2106 continues this tradition by adding requirements to safeguard the

1

constitutional-amendment process from foreign interference. As amended, section 25-4180[1] prohibits contributions and expenditures from "foreign nationals" (as defined by the statute) for activity promoting or opposing amendments to the constitution, §25-4180(d)(1), (e); contains reporting and certification requirements, §25-4180(a)–(c), (f); and defines an enforcement scheme to ensure compliance with state campaign-finance laws, §25-4180(d)(2)–(3), (h)–(i). Section 25-4180 is "a part of … the campaign finance act" (hereinafter, the KCFA). §25-4180(j).

**Prohibition.** Central to HB 2106 is a new prohibition limiting the influence of foreign money in state constitutional proposition elections. Before 2022, campaigns to change the state constitution were relatively obscure—and local. As explained below, that materially changed in 2022, calling out for reform.

Subsection 25-4180(d)(1) now provides that, "No person shall accept, directly or indirectly, any contribution or expenditure from a ***foreign national*** made for any activity promoting or opposing the adoption or repeal of any provision of the [state constitution]." (Emphasis added.) That is, after HB 2106 goes into effect on July 1, 2025, it will be unlawful for any person to accept from a foreign national, either by contribution or expenditure, money or property for the purpose of promoting or opposing a constitutional ballot proposition. "Foreign national" is narrowly defined to include: (1) "[a]n individual who is not a citizen or lawful permanent resident"; (2) a foreign government; (3) a foreign political party; (4) an entity organized in a foreign country or an entity that has its principal place of business in a foreign country; or (5) an entity that is wholly or majority-owned by a foreign national, except when the funds used are generated by such domestic

---

[1] Unless otherwise indicated, citations to section 25-4180 are to the section as amended by HB 2106, which takes effect on July 1, 2025.

2

operations and all decisions about contributions or expenditures are made by U.S. citizens or lawful permanent residents. §25-4180(e)(1)–(5).

**Reporting.** Section 25-4180 outlines two primary reporting requirements. *First*, "person[s] who engage[] in an activity promoting or opposing the adoption or repeal of any provision of the [state constitution]"[2] ***and*** "who accept[] money or property for the purpose of engaging in such activity" must file an annual report with the secretary of state. §25-4180(a).[3] This report must disclose contributions over $50 received "for such purposes" during the preceding year; the name and address of each contributor and the amount contributed; and expenditures over $50, along with the payee and amount for each expenditure. *Id.*

In addition, HB 2106 requires those reporting under subsection 25-4180(a) to certify (1) they have "not knowingly accepted contributions or expenditures either directly or indirectly from a foreign national," and that (2) each donor named "is not a foreign national and has not knowingly accepted contributions or expenditures either directly or indirectly from any foreign national" that exceeds $100,000 within the preceding four years. §25-4180(a)(1)–(2). HB 2106 requires those accepting contributions and expenditures as described in subsection 25-4180(a) to require donor certifications. §25-4180(b). Such donors must certify they are not a "foreign national" and have "not knowingly accepted contributions or expenditures either directly or indirectly from any foreign national" that exceed $100,000 within the preceding four years of the contribution or expenditure. *Id.*

---

[2] A person is engaged in "promoting or opposing the adoption or repeal of any provision of the Kansas constitution … upon the date that the concurrent resolution passes [the state legislature] in its final form." §25-4180(g).

[3] Annual reports are due by February 15 of each year for covered activities in the preceding year. §25-4180(a). Filers must also file preliminary and supplemental reports 15 days before, and 15 days after, any election on a constitutional ballot proposition. §25-4180(f).

*Second*, persons making "independent expenditure[s]" for "promoting or opposing the adoption or repeal of any provision of the [state constitution]" must report and certify to the Commission that they have "not knowingly accepted any moneys either directly or indirectly from any foreign national" that exceed $100,000 within the preceding four years. §25-4180(c).

**Enforcement.** Section 25-4180 outlines how its requirements are to be enforced. As to subsection 25-4180(d)(1)'s prohibition on accepting contributions or expenditures from foreign nationals, the Commission and the Attorney General may enforce the subsection through a civil enforcement action and obtain injunctive relief and statutory damages not to exceed two-times the amount of the prohibited contribution or expenditure. §25-4180(d)(2)–(3).

As to section 25-4180's reporting requirements, first the Commission must send notice of a failure to report and allow 15 days for compliance. §25-4180(h). If the notified person fails to comply with the statute's mandatory reporting, the person is subject to a $10-per-day civil penalty, not to exceed $300 in total penalty. *Id.* The statute clarifies that "[t]he ***intentional*** failure to file any report" under subsection 25-4180(a) subjects the violator to criminal prosecution for a class A misdemeanor. §25-4180(i) (emphasis added). Further, "***intentionally*** making any false material statement in a report … made under the campaign finance act" is punishable by criminal prosecution. §25-4168 (emphasis added).

This case arises against this statutory backdrop.

## II.    Factual & Procedural Background

Plaintiff challenges the constitutionality of HB 2106. This bill was adopted on April 10, 2025, and repeals and reenacts, as amended, Kan. Stat. Ann. § 25-4180 (effective July 1, 2025). Plaintiff filed its complaint on May 16, 2025, and alleges six claims under the First and Fourteeth Amendments to the U.S. Constitution against the Attorney General, the nine appointed volunteer members of the Kansas

Governmental Ethics Commission, and the Executive Director of the Commission, all of whom are sued in their official capacities. (*See generally* Compl., ECF No. 1.)

On substance, Plaintiff claims HB 2106 (1) fails strict scrutiny under the Speech Clause because Kansas allegedly has no compelling interest in regulating foreign influence and money in elections on state constitutional ballot propositions and, in any event, and HB 2106 is not narrowly tailored to those interests; (2) fails strict scrutiny by allegedly violating Plaintiff's freedom of association with foreign nationals; (3) violates the Speech Clause because HB 2106 allegedly fails to incorporate a *mens rea* requirement; (4) is allegedly unconstitutionally overbroad and vague; and (5) violates due process by allegedly applying campaign-finance laws retroactively. To Plaintiff, HB 2106 presents "a series of exceedingly broad, highly invasive, and at times completely incomprehensible restrictions," that will curb its speech. (*Id.* ¶ 4.) Plaintiff broadly seeks to invalidate HB 2106 and to "enjoin[] Defendants … from taking any steps to implement and enforce HB 2106." (*Id.* at 51, Wherefore Cl. ¶¶ A–B.) Plaintiff argues HB 2106 is unconstitutional both facially and as applied, and it asks the Court to declare the law unconstitutional and enjoin its implementation and enforcement as to everyone without limit. (Compl., ¶ 16, ECF No. 1; Mot. for Prelim. Inj. (Mot.) 1, 18, 25, ECF No. 9.) Plaintiff now requests a preliminary injunction to that effect. (Mot. 25.)

## LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff needs to make a "clear showing" of: (1) likely success on the merits; (2) a likelihood that the plaintiffs will suffer irreparable harm absent preliminary relief; (3) that the balance of equities tips in the plaintiffs' favor; and (4) that a preliminary injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted

unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 971, 972 (1997) (per curiam).

## ARGUMENT

### I.    Plaintiff's Claims Are Unripe Because the Commission Has Not Completed Its Review and Implementation of HB 2106

As Defendants argue in their motion to dismiss, Plaintiff's constitutional claims are not ripe for review. (*See generally* Mot. to Dismiss, ECF No. 28.) Plaintiff challenges the entirety of HB 2106, and seeks to "[e]njoin Defendants, their respective agents, officers, employees, and successors … ***from taking any steps to implement and enforce HB 2106***." (Compl. 51, Wherefore Cl. ¶¶ A–B (emphasis added), ECF. No. 1; Mot. 25.) Plaintiff makes plain that its challenge is both a facial and as-applied challenge to the entire statute. (Mot. 1, 18, 25.) To adjudicate Plaintiff's facial challenge, the Court would need to decide the meaning of, and interpret the scope of, section 25-4180. Therein lies the problem.

As the Court recognized in *Fresh Vision OP, Inc. v. Skoglund*, "[a] facial challenge is the 'most difficult challenge to mount successfully.'" 2025 WL 26693, *6 (D. Kan. Jan. 3, 2025) (quoting *United States v. Rahimi*, 602 U.S. 680, 693 (2024)). Plaintiff must show "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice*, LLC, 603 U.S 707, 723 (2024) (cleaned up). This standard is "rigorous," *id.* at 723, and "[e]ven in the First Amendment context, facial challenges are disfavored," *id.* at 744. But critically, as *Fresh Vision OP* states, "[t]he first step in the proper facial analysis is to assess the state law['s] scope. What activities, by what actors, do the laws prohibit or otherwise regulate?" 2025 WL 26693, *6 (quoting *Moody*, 603 U.S. at 724). Here, assessing the "law['s] scope" puts the cart before the horse and risks short-changing state administrative decision making.

6

The Commission is charged with implementing and enforcing the KCFA. Kan. Stat. Ann. § 25-4119a(b), (d). It "may adopt rules and regulations for the administration of the campaign finance act," and these proceedings are subject to state rulemaking requirements in article 4 of chapter 77 of Kansas Statutes Annotated. §25-2119a(d). The State's rulemaking process "involves a proposed rule, a public notice and comment period, and the issuance of a final rule along with responses to the comments." *Bd. of Cnty. Comm'rs of Sumner Cnty. v. Bremby*, 189 P.3d 494, 502 (Kan. 2008) (citing Kan. Stat. Ann. § 77-415). The process also includes provisions allowing for the adoption and implementation of "temporary rules and regulations." Kan. Stat. Ann. § 77-422.

In addition to rulemaking authority, the Commission also has the authority to issue advisory opinions "on questions concerning the interpretation of the campaign finance act." §25-4159. "Any person who acts in accordance with the provisions of such an opinion, shall be presumed to have complied with the provisions of the campaign finance act." *Id.*

The Commission has exercised regulatory authority over the KCFA, including section 25-4180, since that section was adopted in 1987. *See* Kan. Sess. Laws 1987, ch. 129, § 1 (codified at Kan. Stat. Ann. § 25-4180). As part of this administrative oversight, the Commission is responsible for promulgating form reports and instructions for filers to complete. The Commission's existing form reports and instructions are subject to judicial notice and are on the Commission's website and include instructions, summary pages, and schedules. *See* Constitutional Ballot Question, Receipts and Expenditure Reports, Kansas.gov, *available at* https://bit.ly/3G1pf2V (last accessed on June 13, 2025).

The Commission has not completed its review and implementation of HB 2106's changes to section 25-4180. As the Commission's Executive Director Wade Wiebe explains, the Commission has not had the opportunity to update its form

reports and instructions based on the revisions to HB 2106. (Decl. of W. Wiebe (Wiebe Decl.), ¶ 9, attached as **Ex. A**) Nor has it had the opportunity to commence rulemaking proceedings to provide further instructions and guidance on the requirements in section 25-4180. *Id.* For instance, by adopting forms instructing filers which "contributions" and "expenditures" must be reported and how to report those transactions. Plaintiff argues throughout its motion that existing "definition[s]" in this regard "make[] no sense" (Mot. 18)—but the Commission has not yet updated the guidance and instructions on what filers must report.

The 2025 legislative session resulted in multiple amendments to the KCFA, and Commission staff are still reviewing each piece of legislation and systematically proposing regulatory updates to the Commission for consideration. (*Id.* ¶ 10.) This includes HB 2106. (*Id.*) The Commission has not completed its review of the statute, but intends to do so in the near term, after which Executive Director Wiebe will make a presentation to the Commissioners regarding implementing rules and regulations governing the requirements in §25-4180, as amended by HB 2106. (*Id.*)

Challenging a statutory enactment before an implementing agency has had an opportunity to review the statute and adopt forms, implement rules, regulations, and other guidance, presents basic prudential ripeness concerns. In cases encroaching on agency decision making, "letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and ... protect[s] the agencies from judicial interference' in an ongoing decision-making process." *Am. Petroleum Inst. v. E.P.A.*, 683 F.3d 382, 386 (D.C. Cir. 2012) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). Such restraint "also conserve[s] judicial resources" and "comports with [court's] theoretical role as the governmental branch of last resort." *Id.* (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d

8

1423, 1431 (D.C. Cir. 1996)). Exercising prudence "ensures that Article III courts make decisions only when they have to, and then, only once." *Id.*

Failure to defer to the Commission's yet-to-be-exercised regulatory authority risks overriding that authority. Again, Plaintiff asks the Court to enjoin the Commission from "implementing … HB 2106." (Compl. 51, Wherefore Cl. ¶¶ B, ECF. No. 1; Mot. 25.) Plaintiff seeks to prevent the Commission from exercising regulatory authority that the KCFA delegates to the Commission, including "adopt[ing] rules and regulations for the administration of the campaign finance act," Kan. Stat. Ann. § 25-2119a(d), before the Commission exercises that authority.

This is problematic for several reasons. *First*, resolution of a facial challenge such as is present here would require the Court to interpret and finally decide the scope and meaning of section 25-4180 before the administrative process is complete. The Court's interpretation would thus usurp any reasonable interpretation by the Commission. Also, as Director Wiebe notes, he is "concerned that if the Defendants must respond to Plaintiff's argument in court before the administrative process is complete, the arguments made by counsel could materially impact whether and how the Commission exercises its rulemaking authority under the KCFA." (Wiebe Decl. ¶ 12.) *Second*, making a premature determination of the meaning of section 25-4180 would effectively eliminate the Commission and the state courts from the administrative process of interpreting the scope of this state statute, thereby giving rise to federalism concerns. *See Mi Familia Vota v. Hobbs*, 977 F.3d 948, 954 (9th Cir. 2020) ("[T]he Supreme Court's election law jurisprudence counsels for deference to politically accountable state officials charged with the responsibility for conducting elections."). *Third*, federalizing the interpretation of section 25-4180 in the first instance will guarantee the Commission is unable to complete its job of issuing informal guidance through form reports, certifications, and instructions.

In all, prudence requires patience to allow the administrative-review process time to start and finish. Defendants respectfully ask the Court to yield to that process on prudential ripeness grounds. (*See* Mot. to Dismiss, ECF No. 28.)

## II. Plaintiff Has Not Made a Clear Showing of Likely Success on the Merits of Its First and Fourteenth Amendment Claims

### A. HB 2106 serves compelling state interests and is tailored to those interests

HB 2106 bars foreign nationals who are not lawful permanent residents of the United States from engaging in advocacy on Kansas constitutional ballot propositions. It does this by making it effectively impossible for organizations engaged in constitutional ballot proposition campaigns to accept large sums of foreign money, Kan. Stat. Ann. § 25-4180(a)–(c), and by forbidding anyone else from accepting foreign direct expenditures of foreign money on such advocacy, §25-4180(d)(1). This bar against the participation of foreign nationals in elections directly affecting Kansas' constitutional architecture serves compelling state interests: safeguarding the sovereignty of the people of Kansas and maintaining the legitimacy of the democratic processes ensuring that sovereignty.

To its credit, Plaintiff does not hide from the fact that foreign money has indeed made its way into Kansas' consideration of constitutional ballot propositions. Written testimony received by the Kansas Senate in considering HB 2106 and highlighted by Plaintiff in its motion claimed that Hansjörg Wyss, a Swiss national, has made over $230 million in gifts to an American nonprofit called the Sixteen Thirty Fund since 2014. (*See* Mot., Exs. 3 & 4.) The same testimony cited to a report by Americans for Public Trust, which states that the Sixteen Thirty Fund has, over the time Mr. Wyss has been making his gifts, spent approximately $130 million to influence state ballot issue elections, including approximately $1.595 million to influence Kansas constitutional ballot questions. (*Id.*, Ex 3 at n.7 and Ex. 4 at n.2,

(citing Americans for Public Trust, *Foreign Influence in State Ballot Issues: How Sixteen Thirty Fund's Pipeline of Foreign Cash Impacts State Politics*, Americans for Public Trust (Oct. 18, 2024), https://bit.ly/3HJlaRB.) Plaintiff's disclosures filed with the Commission for the 2022 constitutional ballot proposition election show that Plaintiff received precisely $1.595 million from the Sixteen Thirty Fund during 2022: $1.485 million in cash and an additional $110,000 in in-kind contributions. Receipts and Expenditures Report of Kansans for Constitutional Freedom, Inc., (Feb. 15, 2023), at Sch. A, p. 1 & Sch. B, p. 2, https://bit.ly/44pQNrd.

The U.S. Supreme Court has long recognized that while foreign nationals in the United States enjoy many of the constitutional rights of citizens, including rights to freedom of religion, press, and expression under the First Amendment, states may exclude foreign citizens from activities "intimately related to the process of democratic self-government." *Bernal v. Fainter*, 467 U.S. 216, 220 (1984); *see also Gregory v. Ashcroft*, 501 U.S. 452, 462 (1991); *Cabell v. Chavez–Salido*, 454 U.S. 432, 439–40 (1982). "[A] State's historical power to exclude aliens from participation in its democratic political institutions [is] part of the sovereign's obligation to preserve the basic conception of a political community." *Foley v. Connelie*, 435 U.S. 291, 295–96 (1978) (citation omitted). In other words, the government may reserve "participation in its democratic political institutions" for citizens of this country. *Id.* It is fundamental to the definition of a political community that foreign citizens do not have a constitutional right to participate in, and thus may be excluded from, activities of democratic self-government. Kansas therefore "has a compelling interest for purposes of First Amendment analysis in limiting the participation of foreign citizens" in activities of Kansas' "democratic self-government, and in thereby preventing foreign influence over" *Bluman v. FEC*, 800 F. Supp. 2d 281, 288 (D.D.C. 2011) (J., Kavanaugh), *aff'd*, 565 U.S. 1104 (2012).

11

It is settled that political contributions and expenditures for advocacy on ballot questions—including contributions to groups that in turn make contributions or expenditures—constitute part of the process of democratic self-government. The Sixth Circuit recently observed "advocacy around ballot initiatives is even more connected to the democratic process than advocacy for or against a candidate." *OPAWL - Building AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 778 (6th Cir. 2024). So much more so for ballot questions concerning a state's constitution.

The Kansas Supreme Court's has confirmed the state constitution is "the fundamental law of the people." *State ex rel. Anderson v. Shanahan*, 327 P.2d 1042, 1046 (Kan. 1958). And, "in constitutional changes the popular voice is the *paramount* act. … This is a government by the people, and, whenever the clear voice of the people is heard, legislatures and courts must obey." *Prohibitory Amend. Cases*, 24 Kan. 700, 711 (1881) (emphasis in original). No political spending could be closer to democratic self-government than spending to influence Kansans' decisions on changes to their "fundamental law." HB 2160 thus serves the compelling state interest of protecting the sovereignty of the people of Kansas. The statute is—and through the administrative process will continue to be—tailored to this interest.

Further, HB 2160 includes disclosure and certification requirements in service of the State's compelling interest. These sorts of disclosures serve an additional state interest: that of voter information regarding the source of funds supporting or opposing a measure. *See Buckley v. Valeo*, 424 U.S. 1, 67 (1976); *see also Sampson v. Buescher*, 625 F.3d. 1247, 1259 (10th Cir. 2010) (assuming the existence of this informational interest in the context of state ballot issue campaigns). Plaintiff's failure to challenge HB 2106's pre-amendment disclosure requirements concedes that the informational interest served is compelling.

**B.      HB 2106 includes a *mens rea* requirement before the State can impose criminal liability**

Plaintiff argues that subsection 25-4180(d) violates the First Amendment because that subsection imposes criminal liability without requiring proof of scienter. (Mot. 16.) But subsection 25-4180(d) imposes civil, not criminal liability, and thus Plaintiff's argument fails.

The only mechanism available to enforce subsection 25-4180(d) is a "civil action" brought by "the commission or the attorney general," in which "injunctive relief sufficient to prevent any subsequent violations of this subsection [(d)] by such person and statutory damages" are the only available remedies. Kan. Stat. Ann. § 25-4180(d)(2)–(3). By contrast, only intentional failure to file the reports required in subsections 25-4180(a)(1), (a)(2), can give rise to criminal liability. Subsection 25-4180(i) states, "[t]he intentional failure to file any report required by subsection (a) is a Class A misdemeanor." No other provision of HB 2106 carries criminal sanctions. But even if violation of subsection 25-4180(d) gave rise to criminal liability, Plaintiff has not shown that "the definition [of the crime] plainly dispenses with any mental element," and thus "'intent,' 'knowledge' *or* 'recklessness' suffices to establish criminal responsibility." §21-5202(d)–(e) (emphasis added); *State v. Lewis*, 953 P.2d 1016, 1023 (Kan. 1998) ("[T]he intent requirement of K.S.A. [21-5202] applies regardless of whether the criminal offense is found in the criminal code ***or elsewhere in the statutes***." (emphasis added)).

The primary decision relied on by Plaintiff, *Counterman v. Colorado*, 600 U.S. 66, 75 (2023), is not to the contrary. *Counterman* held that criminal prosecution of true threats requires proof that a criminal defendant made the threat "recklessly"— that is, the defendant was "aware that 'others could regard his statements as' threatening violence and 'deliver[ed] them anyway.'" *Id.* at 79. According to the Court, requiring a reckless state of mind for true threat prosecutions strikes the

13

right balance between ensuring that the state can protect victims from "'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence'" through criminal prosecution, while, on the other hand, ensuring that First Amendment-protected expression is not chilled. *Id.* at 75. "By reducing an honest speaker's fear that he may accidentally or erroneously incur [criminal] liability, a *mens rea* requirement provides breathing room for more valuable speech." *Id.* (cleaned up). Contrary to Plaintiff's assertion, however, *Counterman*'s holding is limited to criminal prosecutions for true threats. *Counterman* does not require scienter in actions for civil liability for harm caused by true threats—let alone civil liability in other contexts like reasonable limits on campaign-finance contributions or expenditures. Such a conclusion would be a watershed.

Indeed, *Bluman* upheld an enforcement scheme under the FECA that mirrors the differential scienter requirements in HB 2106 for civil and criminal penalties. Like HB 2106, violations of the provision of the FECA at issue in *Bluman*, 52 U.S.C. § 30121, can be prosecuted either through civil or criminal proceedings, §30109. And like subsection 25-4180(d), the FECA allows the Federal Election Commission to enter into a conciliation agreement imposing civil penalties up to the "greater of $5,000 or an amount equal to any contribution or expenditure involved in such violation" of §30121 without proving scienter. 52 U.S.C. § 30109(a)(5)(A). By contrast, criminal liability may be imposed on a defendant for violation of 52 U.S.C. § 30121, only if the defendant acted "knowingly and willfully." 52 U.S.C. § 30109(d). Then-Judge Kavanaugh specifically emphasized the fact that the FECA requires scienter before imposing ***criminal*** liability saves it from constitutional infirmity. *Bluman v. FEC*, 800 F. Supp. 2d 281, 292 (D.D.C. 2011), *aff'd,* 565 U.S. 1104 (2012) ("Third, we caution the government that seeking ***criminal*** penalties for violations of this provision—which requires that the defendant act "willfully," will require proof of the defendant's knowledge of the law." (emphasis added)). So too here.

14

Subsection 25-4180(d) imposes only civil liability and therefore its lack of scienter requirement on its face[4] presents no issue under *Bluman*.

### C.    HB 2106 is prospective and satisfies due process

Plaintiff asserts that HB 2106 acts retroactively and therefore violates the Due Process Clause of the Fourteenth Amendment to the extent of its retroactive application. (Mot. 22–24.) But Plaintiff's argument misreads the plain text of the statute, which operates prospectively and enjoys a strong presumption against retroactive application in any event.

"In determining whether the provisions of any statute apply prospectively or retroactively, the general rule is that a statute operates only prospectively unless there is clear language indicating the legislature intended otherwise." *In re Hunt*, 82 P.3d 861, 870 (Kan. App. 2004) (citing *In re Tax Appeal of Alsop Sand Co., Inc.*, 962 P.2d 435 (Kan. 1998)). To determine retrospective effect, "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994). A statute that "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past" is retrospective. *Id.*

At first, and as Plaintiff concedes, HB 2106 has no effect until July 1, 2025. Under the presumption against retroactivity, section 25-4180 as revised must be read as applying to conduct after that date only, unless such a reading is entirely implausible. The most plausible reading is that HB 2106 applies only prospectively, to future conduct.

---

[4] As explained above, the Commission is likely to issue guidance interpreting and implement section 25-4180, including subsection (d), and the elements of proof necessary to succeed under that subsection.

The certification provisions of HB 2106 that Plaintiff targets, Kan. Stat. Ann. § 25-4180(a)(1) and (2), do not apply retroactively because the reporting obligation in subsections 25-4180(a)(1) and (a)(2) are only triggered after a proposed constitutional amendment is approved by the Kansas Legislature as to a specific amendment. The certification requirements in subsection 25-4180(a) apply to (1) a "person who engages in any activity promoting or opposing the adoption or repeal of any provision of the constitution of the state of Kansas" and (2) "who accepts moneys or property for the purpose of engaging in such activity." §25-4180(a). But the obligation of such a person to forgo "contributions or expenditures either directly or indirectly from a foreign national" that triggers the reporting requirement in subsection 25-4180(a) arises only after the Kansas Legislature approves the proposed constitutional amendment: "Any person who engages in any activity promoting or opposing the adoption or repeal of any provision of the Kansas constitution shall be considered engaged in such activity ***upon the date*** that the concurrent resolution passes the Kansas house of representatives and the senate in its final form." §25-4180(g) (emphasis added).

Put another way, the definition of "such activity" in subsection 25-4180(a) must be read in conjunction with the temporal limitation in subsection 25-4180(g) that the certification requirement only applies to a particular amendment after ("upon the date") the legislature approves the amendment in question. A person becomes "engage[d] in any activity promoting or opposing the adoption or repeal of" a provision of the constitution of Kansas, only "upon the date" a proposed amendment passes the legislature. §25-4180(a), (g). A person like Plaintiff who solicited moneys from foreign nationals to advocate for past constitutional amendments is not prohibited from advocating for future amendments because of those past receipts. Plaintiff would only violate the Act to the extent it accepts foreign moneys for future constitutional advocacy.

Nor does the certification in subsection 25-4180(a)(2) apply retroactively. That provision requires certification that no donor is a foreign national or receives in excess of $100,000 from foreign nationals for the four years prior. §25-4180(a)(2). But once again, this certification applies prospectively to constitutional ballot propositions pending as of July 1, 2025, or future amendments "upon the date" they pass the legislature. It does not, contrary to Plaintiff's overwrought read, bar persons who accepted such donations in the past. (Mot. 23.)

Plaintiff ignores the temporal limitation in subsection 25-4180(g) because it torpedoes their argument about retroactivity. But even if there were some ambiguity in HB 2106 about whether it applied retroactively, Plaintiff would still bear a heavy burden to show that the statute's text can only be read to apply retroactively. "The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other." *U.S. Fid. & Guar. Co. v. United States*, 209 U.S. 306, 314 (1908). Plaintiff argues that subsection "25-4180(a)(1) permanently bar[s] any person from … promoting or opposing a constitutional amendment unless that person can certify that they have never knowingly accepted contributions from a foreign national." (Mot. 23.) Plaintiff's reading might be plausible if HB 2106 did not include the temporal triggering event in subsection 25-4180(g). But, as it is, the most reasonable construction of the statute, especially in light of the presumption against retroactive application, is that the statute's prohibition applies prospectively only after the Legislature passes a proposed amendment.

While this reading is plain on the text's face, the Commission's potential guidance will likely further clarify HB 2106's prospective application. For example, the Commission's revised forms could reasonably require information about the pending constitutional ballot propositions that the person opposes or supports and that, for purposes of those amendments, the person utilized no foreign funds. Such

17

guidance has the virtues of being right on the text and resolving any concern Plaintiff may have about the temporal scope on the certification requirement.

## III.    Plaintiff Cannot Make a Clear Showing of Irreparable Harm

Plaintiff must show, with evidence, irreparable injury if the Court were to deny the injunction. *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1254 (10th Cir. 2024). "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985)). While it is true there is a "presumption of irreparable harm for the loss of First Amendment freedoms," *Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.*, 660 F. App'x 600, 603 (10th Cir. 2016), this presumption is inapplicable because Plaintiff cannot show that HB 2106 limits its protected speech—because foreign nationals have no right to speak into American elections. Indeed, the opposite presumption applies: "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Aid for Women v. Foulston*, 441 F.3d 1101, 1119 (10th Cir. 2006).

Plaintiff contends the statute "will effectively shut down [Plaintiff's] ability to engage in core political speech" on a constitutional ballot proposition slated for next year's August election. (*See* Mot. 24.) Not so. Section 25-4180 prohibits Plaintiff from accepting contributions and expenditures from foreign nationals "made for any activity promoting or opposing the adoption or repeal of" constitutional ballot propositions. Kan. Stat. Ann. § 25-4180(d)(1). Plaintiff remains free to "buy[] airtime," "mobiliz[e] staff and volunteers," and "engage in personal conversations with voters" about upcoming constitutional ballot propositions, and it may fund that advocacy through lawfully sourced contributions. (*See* Mot. 25.) Section 25-4180 simply does not regulate this conduct, or Plaintiff's "mobilizing" efforts writ large. Nor is it irreparable harm to say that permissible government regulation limits a

person's desired amplification of their speech; here, the ability to raise millions of dollars from foreign nationals.

Further, Plaintiff has no present reporting obligations under section 25-4180(a). Under subsection 25-4180(g), "[a]ny person who engages in any activity promoting or opposing the adoption or repeal of any provision of the Kansas constitution shall be considered engaged in such activity" when a concurrent resolution passes both houses of the Kansas Legislature. Again, this is the trigger for the reporting and certification requirements under the statute. But even then, the first report is not due until February 15, 2026. Thus, Plaintiff's initial reporting obligation is eight months from now, which provides ample time for promulgation of the final form reports and certifications by the Commission.

## IV.    The Balance of Hardships and the Public Interest Favors Defendants

The final two factors—the balance of hardships and the public interest— merge when the government is the defendant. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the public interest is decisively in Defendants' favor. The interest served by HB 2106 is as compelling as it is utterly foundational: the sovereignty of the people of Kansas and the legitimacy of the democratic processes ensuring that sovereignty. The injury to this interest by a preliminary injunction would be compounded at this premature stage by this Court's intrusion on yet-to-be exercised discretion by the Commission as the primary regulator under the KCFA. (*See* Argument, I, *supra*.) Unless Plaintiff has a right to aid foreign nationals in making expenditures to influence Kansas constitutional ballot proposition in state elections (which they do not), they will suffer no hardship by allowing the Commission an opportunity to implement HB 2106 pursuant to its delegated authority.

## CONCLUSION

Plaintiff's motion for preliminary injunction should be denied.

Dated this 16th day of June, 2025.

Respectfully submitted,

*/s/ Chad E. Blomberg*

Chad E. Blomberg, KS #23533
First & Fourteenth PLLC
6400 Glenwood Street, Suite 201
Overland Park, KS 66202
Phone: (816) 600-0604
Email: chad@first-fourteenth.com

Christopher O. Murray (pro hac vice pending)
Julian R. Ellis, Jr. (admitted pro hac vice)
Andrew M. Nussbaum (admitted pro hac vice)
First & Fourteenth PLLC
2 N. Cascade Avenue, Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-4937
Emails: chris@first-fourteenth.com
        julian@first-fourteenth.com
        andrew@first-fourteenth.com

*/s/ James Rodriguez*

James Rodriguez, KS #29172
Office of Kansas Attorney General
Kris W. Kobach
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (785) 368-8197
Email: jay.rodriguez@ag.ks.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on June 16, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

pedro@itrlaw.com
nicole@itrlaw.com
efrost@elias.law
jabbuhi@elias.law
rmedina@elias.law


*/s/ Kelly Callendar*
First & Fourteenth PLLC

21