**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KANSANS FOR CONSTITUTIONAL FREEDOM, | |
| Plaintiff, | |
| v. | Case No. 2:25-cv-2265-DDC-GEB |
| KRIS KOBACH, et al., | |
| Defendants. | |

**Defendants' Motion to Dismiss Under Rule 12(b)(6),
or Alternatively, to Hold the Case in Abeyance,
with Suggestions in Support**

## INTRODUCTION

Plaintiff challenges House Bill 2106 before the Kansas Governmental Ethics Commission has had any opportunity to exercise its statutory authority to review and implement the law through rulemaking or administrative guidance, making this lawsuit premature under the prudential ripeness doctrine. The Commission has not yet promulgated rules, issued guidance, or taken any enforcement action under House Bill 2106, which does not take effect until July 1, 2025, and Plaintiff faces no reporting obligations until February 15, 2026. Premature federal intervention would usurp the Commission's delegated authority under the Kansas Campaign Finance Act, raise substantial federalism concerns, and require this Court to interpret a state campaign-finance statute in the first instance, despite the Kansas Legislature's express delegation of that authority to the Commission. Allowing the administrative process to proceed will clarify the requirements and potentially narrow or eliminate the constitutional concerns Plaintiff raises, serving both judicial economy and federal-state comity.

For these reasons, Defendants respectfully request that the Court dismiss Plaintiff's complaint without prejudice under Federal Rule of Civil Procedure 12(b)(6), or alternatively, hold this case in abeyance pending the Commission's administrative implementation of HB 2106.

## RELEVANT BACKGROUND

Plaintiff challenges the constitutionality of HB 2106. HB 2106 was adopted on April 10, 2025, and repeals and reenacts, as amended, Kan. Stat. Ann. § 25-4180 (effective July 1, 2025). Section 25-4180[1] applies to activity promoting or opposing the adoption or repeal of any provision of the Constitution of the State of Kansas (i.e., constitutional ballot propositions). The statute bars contributions and

---

[1] Unless otherwise indicated, citations to section 25-4180 are to the section as amended by HB 2106, which takes effect on July 1, 2025.

1

expenditures by foreign nationals regarding constitutional ballot propositions, requires campaign-finance reporting and certifications, and sets out an enforcement scheme. Section 25-4180 is "a part of and supplemental to the campaign finance act" (hereinafter, the KCFA). §25-4180(j).

Plaintiff filed its complaint on May 16, 2025, alleging six claims under the First and Fourteenth Amendments to the U.S. Constitution against the Attorney General, the nine appointed volunteer members of the Kansas Governmental Ethics Commission, and the Executive Director of the Commission, all of whom are sued in their official capacities. (*See generally* Compl., ECF No. 1.) Plaintiff broadly seeks to invalidate HB 2106 under the First and Fourteenth Amendments, and to "enjoin[] Defendants … from taking any steps to implement and enforce HB 2106." (*Id.* at 51, Wherefore Cl. ¶¶ A–B.) Plaintiff has also filed a motion for preliminary injunction requesting an injunction consistent with the broad relief requested in the complaint. (Mot. for Prelim. Inj. 25, ECF No. 9.) Plaintiff argues that HB 2106 is unconstitutional both facially and as applied and asks the Court to declare the law unconstitutional and enjoin its implementation and enforcement. (Compl., ¶ 16, ECF No. 1; Mot. for Prelim. Inj. 1, 18, 25, ECF No. 9.)

Defendants move to dismiss Plaintiff's complaint without prejudice under Rule 12(b)(6), because Plaintiff's claims are not yet ripe. This is so because the Commission has yet to engage in rulemaking or promulgate other guidance to implement HB 2106's requirements.[2]

---

[2] Defendants' motion under Rule 12(b)(6) is timely. Plaintiff served Defendants the summonses and complaint via FedEx Priority Overnight pursuant to Rule 4(j)(2)(B) and Kan. Stat. Ann. § 61-3003(c). (*See* Aff. of Service, ECF No. 14.) The service packets were mailed on Thursday, May 22, 2025 (the Commissioners and Director Wiebe), and Friday, May 23, 2025 (the Attorney General), and were received the next day (at the earliest), effectuating service on that day. *See* Kan. Stat. Ann. § 61-3003(c)(3)–(4). Under Federal Rule of Civil Procedure 6(a)(1)(A), "[w]hen the period is stated in days or a longer unit of time," "the day of the event

## LEGAL STANDARD

The ripeness doctrine draws "both from Article III limitations on judicial power and prudential reasons for refusing to exercise jurisdiction." *Utah Republican Party v. Cox*, 892 F.3d 1066, 1092 (10th Cir. 2018). "Article III and prudential ripeness are both 'concerned with whether a case has been brought prematurely, but they protect against prematureness in different ways and for different reasons.'" *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1224–25 (10th Cir. 2021) (quoting *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003)).

While constitutional ripeness challenges are brought under Rule 12(b)(1), a challenge on prudential ripeness grounds is analyzed under Rule 12(b)(6). *N. Mill St.*, 6 F.4th at 1230. Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1118 (10th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff bears the burden of showing that its claims are prudentially ripe for judicial review. *See Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1064 (10th Cir. 2012).

## ARGUMENT

### I.    Plaintiff's Claims Are Unripe Because the Commission Has Not Completed Its Review and Implementation of HB 2106

To start, Defendants disagree with Plaintiff's claims. Plaintiff raises a series of federal constitutional claims challenging the entirety of HB 2106, and broadly seeks to "[e]njoin Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, ***from taking any steps to implement and enforce HB 2106***." (Compl. 51, Wherefore Cl. ¶¶ A–

---

that triggers the period" is excluded from the calculation. Defendants' Rule 12 deadline therefore commenced on Saturday, May 24, 2025, and Sunday, May 25, 2025, respectively. Fed. R. Civ. P. 6(a)(1)(B). Accordingly, under Rule 6(a)(1)(C), Defendants' Rule 12 deadline is Monday, June 16, 2025.

B (emphasis added), ECF. No. 1.) On substance, Plaintiff claims HB 2106 (1) fails strict scrutiny under the Speech Clause because the State allegedly has no compelling state interest in regulating foreign influence and money in elections on constitutional ballot propositions and, in any event, HB 2106 is not narrowly tailored to those interests (because it is, at the same time, overinclusive and underinclusive); (2) fails strict scrutiny by allegedly violating Plaintiff's freedom of association with foreign nationals; (3) violates the Speech Clause because HB 2106 allegedly fails to incorporate a *mens rea* requirement; (4) is allegedly unconstitutionally overbroad and vague; and (5) violates due process by allegedly applying campaign-finance laws retroactively. To Plaintiff, HB 2106 presents "a series of exceedingly broad, highly invasive, and at times completely incomprehensible restrictions," that will curb its speech. (*Id.* ¶ 4.) While Defendants dispute Plaintiff's characterization of HB 2106, its claims are premature.

HB 2106 was adopted on April 10, 2025. The bill adds new campaign-finance reporting and certifications, limits contributions and expenditures by foreign nationals regarding constitutional ballot propositions, and adds to the existing statutory enforcement scheme. Section 25-4180 makes clear it is "part of … the campaign finance act." *See* Kan. Stat. Ann. § 25-4180(j).

The Commission is charged with interpreting, implementing, and enforcing the KCFA. §25-4119a(b), (d). To do so, it "may adopt rules and regulations for the administration of the campaign finance act," and these proceedings are subject to state rulemaking requirements in article 4 of chapter 77 of Kansas Statutes Annotated. §25-2119a(d). The State's rulemaking process "involves a proposed rule, a public notice and comment period, and the issuance of a final rule along with responses to the comments." *Bd. of Cnty. Commr's of Sumner Cnty. v. Bremby*, 189 P.3d 494, 502 (Kan. 2008) (citing Kan. Stat. Ann. § 77-415). The process also

includes provisions allowing for the adoption and implementation of "temporary rules and regulations." Kan. Stat. Ann. § 77-422.

In addition to rulemaking authority, the Commission also has the authority to issue advisory opinions "on questions concerning the interpretation of the campaign finance act." §25-4159. "Any person who acts in accordance with the provisions of such an opinion, shall be presumed to have complied with the provisions of the campaign finance act." *Id.*

The Commission has exercised regulatory authority over the KCFA, including section 25-4180, since that section was adopted in 1987. *See* Kan. Sess. Laws 1987, ch. 129, § 1 (codified at Kan. Stat. Ann. § 25-4180). As part of this administrative oversight, the Commission is responsible for providing form reports and instructions for filers to complete under the statute. The Court may take judicial notice of the existing form reports and instructions, which are on the Commission's website and include instructions, summary pages, and schedules. *See* Constitutional Ballot Question, Receipts and Expenditure Reports, Kansas.gov, *available at* https://bit.ly/3G1pf2V (last accessed on June 13, 2025).

Plaintiff's complaint fails to plead the Commission's regulatory authority over the KCFA, including HB 2106, and the Commission's authority to issue rules and regulations, and promulgate forms and instructions to guide compliance with state campaign-finance laws. Indeed, as the Executive Director of the Commission explains in his declaration in support of Defendants' opposition to the motion for preliminary injunction, the Commission has not yet had the opportunity to update its form reports and instructions based on HB 2106. (*See* Decl. of W. Wiebe, ¶ 10, ECF 27-1.) Nor has it had the opportunity to commence rulemaking proceedings to provide further guidance on the new requirements in subsection 25-4180. (*Id.*) The Commission's review of HB 2106 is ongoing, along with its review of other amendments to the KCFA. Further, the Executive Director intends to make a

presentation to the Commissioners regarding implementation of the rules and regulations governing section 25-4180, as amended by HB 2106. (*Id.* ¶ 11.)

Challenging a statutory enactment before the agency tasked with its implementation has an opportunity to review the statute and adopt rules, regulations, and other guidance presents basic prudential ripeness concerns. In cases encroaching on agency decision making, "letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and ... protect[s] the agencies from judicial interference' in an ongoing decision-making process." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). It "also conserve[s] judicial resources" and "comports with [court's] theoretical role as the governmental branch of last resort." *Id.* (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996)). Exercising prudence "ensures that Article III courts make decisions only when they have to, and then, only once." *Id.*

Whether a claim is prudentially ripe "turns on two factors: (1) 'the fitness of the issue for judicial review,' and (2) 'the hardship to the parties from withholding review.'" *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019). "The test is not 'rigid or mechanical,' but instead 'flexible and often context-specific.'" *Peck v. McCann*, 43 F.4th 1116, 1133–34 (10th Cir. 2022) (quoting *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir. 1990)).

## A.    HB 2106 is not fit for judicial review.

The fitness requirement protects "the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Wyo. Outdoor Council v. U.S. Forest Serv.,* 165 F.3d 43, 49 (D.C. Cir. 1999). Factors include whether the issue is purely legal, whether the issue would benefit from

agency development and thinking, and whether an agency's decision is substantially final. *See Am. Petroleum Inst.*, 683 F.3d at 387; *see also Farrell-Cooper Min. Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1234–35 (10th Cir. 2013). Courts generally decline to review "tentative" agency positions or to short-circuit an agency's administrative process before it starts. Doing so would "'severely compromise[] the interests' the ripeness doctrine protects: 'The agency is denied full opportunity to apply its expertise … , the integrity of the administrative process is threatened by piecemeal review of the substantive underpinnings of a rule, and judicial economy is disserved because judicial review might prove unnecessary if persons seeking such review are able to convince the agency" of their positions. *Am. Petroleum Inst.*, 683 F.3d at 387 (quoting *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 31 (D.C. Cir. 1984)).

Here, the fitness requirement decisively weighs against ripeness. Failure to allow the Commission to exercise its regulatory authority risks preemptively overriding that authority to interpret state law in the first instance. Again, Plaintiff asks the Court to enjoin the Commission from "implementing … HB 2106." (Compl. 51, Wherefore Cl. ¶¶ B, ECF. No. 1.) That is, Plaintiff seeks to prevent the Commission from exercising the regulatory authority with which it has been delegated under the KCFA, and upon which HB 2106 necessarily relies. This authority includes "adopt[ing] rules and regulations for the administration of the campaign finance act," Kan. Stat. Ann. § 25-2119a(d), before the Commission exercises that authority. This is problematic for several reasons.

*First*, premature resolution of Plaintiff's claims by the Court would usurp any interpretation by the Commission, because such resolution would require the Court to determine the scope and meaning of section 25-4180 in deciding Plaintiff's facial challenge. But "[t]he function of filling in the interstices of [a statute] should be performed, as much as possible, through this quasi-legislative promulgation of

rules." *SEC v. Chenery Corp.*, 332 U.S. 194, 202 (1947). And the KFCA makes this legislative intent express. Kan. Stat. Ann. §§ 25-2119a(d), 25-4180(j).

*Second*, a premature evaluation of the merits—even if preliminary—would raise substantial federalism concerns. Section 25-4180 governs campaign-finance regulations of state elections involving matters of state constitutional concern. The Kansas Legislature has specifically delegated authority to the Commission to implement, including by rule and regulation, state campaign-finance statutes, and the Commission's interpretations are subject to review under state administrative law. Deciding the meaning of section 25-4180 now will effectively eliminate the Commission and the state courts from the administrative process of interpreting the scope of this state statute. As parties to the case, the Commissioners will be bound by the Court's interpretation of the statute, rather than their own informed thinking through the notice-and-comment rulemaking process. *See Mi Familia Vota v. Hobbs*, 977 F.3d 948, 954 (9th Cir. 2020) ("[T]he Supreme Court's election law jurisprudence counsels for deference to politically accountable state officials charged with the responsibility for conducting elections.").

*Third*, federalizing the interpretation of section 25-4180 in the first instance will guarantee the Commission is unable to complete its job of issuing informal guidance through form reports, certifications, and instructions, which it has not had the opportunity to complete. Choosing to decide the case now would mean the Court—as opposed to the Commission—will be responsible for these state administrative duties. Such a course does not serve judicial economy.

### B.    Plaintiff will not suffer substantial hardship

Next is the hardship requirement. "To outweigh the[] 'institutional interests in the deferral of review,' any hardship caused by that deferral must be 'immediate and significant.'" *Am. Petroleum Inst.*, 683 F.3d at 389 (quoting *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 427 (D.C. Cir. 2007)). And "hardship that might

result from delaying review 'will rarely overcome the finality and fitness problems inherent in attempts to review tentative positions.'" *Id.* (quoting *Pub. Citizen Health Research,* 740 F.2d at 31). Here, any claimed hardship is at best mixed and thus insufficient to overcome the lack of fitness for federal judicial review.

*First*, under subsection 25-4180(g), "[a]ny person who engages in any activity promoting or opposing the adoption or repeal of any provision of the Kansas constitution shall be considered engaged in such activity" when a concurrent resolution passes both houses of the Kansas legislature. This is ***the*** triggering event for the reporting and certification requirements under the statute. But even then, the first report is not due until February 15, 2026. Thus, Plaintiff's initial reporting obligation is eight months from now, which provides ample time for completion of the administrative-implementation process before the Commission.

*Second*, to the extent Plaintiff intends to accept moneys from foreign nationals after HB 2106's effective date of July 1, 2025, while the administrative-review process is ongoing, any claimed harm is easily ameliorated to avoid premature judicial intervention. Plaintiff is a large institutional advocacy organization that has sophisticated campaign-finance counsel and processes. (*See* Decl. of M. Kubic, ¶ 6 (Plaintiff's President stating it spent $11 million on a single constitutional ballot measure in 2022), ECF No. 9-2).) Plaintiff can segregate unlawful contributions it receives from foreign nationals during the Commission's review and implementation. Plaintiff could also seek clarification of section 25-4180 through a formal request for advisory opinion. Or it could ask their foreign contributors to hold such contributions until the administrative process is complete.

Allowing the Commission to take the first pass on implementation of HB 2106 will ensure the Court's review accounts for how the body tasked with administration of the KCFA is going to require compliance with the statute. Defendants readily admit, however, that an advisory opinion—or even

9

rulemaking—will not resolve the core constitutional question presented, which is whether Kansas may regulate foreign influence in elections on constitutional ballot propositions at all. *See Bluman v. FEC*, 800 F. Supp. 2d 281, 287 (D.D.C. 2011) (J., Kavanaugh) ("[E]xclusion of aliens from basic governmental processes is not a deficiency in the democratic system but *a necessary consequence of the community's process of political self-definition*."), *aff'd*, 565 U.S. 1104 (2012). But that narrower issue could be resolved through an amended complaint. As currently framed, Plaintiff's claims would require the Court to interpret the meaning and scope of section 25-4180 to the exclusion of the state agency that has been charged with that authority. This presents a quintessential ripeness issue, and it must yield to any potential unmitigated harm to Plaintiff.

## CONCLUSION

Defendants respectfully ask the Court to dismiss Plaintiff's complaint without prejudice under Rule 12(b)(6). Alternatively, Defendants ask the Court to hold this case in abeyance pending administrative action by the Commission in reviewing and implementing the statutory requirements in HB 2106.

Dated this 16th day of June, 2025.

Respectfully submitted,

_/s/ Chad E. Blomberg_
Chad E. Blomberg, KS #23533
First & Fourteenth PLLC
6400 Glenwood Street, Suite 201
Overland Park, KS 66202
Phone: (816) 600-0604
Email: chad@first-fourteenth.com

Christopher O. Murray (pro hac vice pending)
Julian R. Ellis, Jr. (admitted pro hac vice)
Andrew M. Nussbaum (admitted pro hac vice)
First & Fourteenth PLLC
2 N. Cascade Avenue, Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-4937
Emails: chris@first-fourteenth.com
         julian@first-fourteenth.com
         andrew@first-fourteenth.com

_/s/ James Rodriguez_
James Rodriguez, KS #29172
Office of Kansas Attorney General
Kris W. Kobach
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (785) 368-8197
Email: jay.rodriguez@ag.ks.gov

_Attorneys for Defendants_

**CERTIFICATE OF SERVICE**

I certify that on June 16, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

pedro@itrlaw.com
nicole@itrlaw.com
efrost@elias.law
jabbuhi@elias.law
rmedina@elias.law


*/s/ Kelly Callender*
First & Fourteenth PLLC