IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KANSANS FOR CONSTITUTIONAL
FREEDOM,

        Plaintiff,

  v.

KRIS KOBACH, et al.,

        Defendants.

No. 2:25-cv-02265-DDC-GEB

**ORAL ARGUMENT REQUESTED**

**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

    I.    KCF's claims are prudentially ripe. ................................................................................... 1

    II.   KCF is likely to succeed on its claims under the First and Fourteenth Amendments. ........ 4

          A.    Defendants fail to show that HB2106 survives strict scrutiny. ............................... 4

          B.    HB2106 lacks a constitutionally required *mens rea* element. ................................ 6

          C.    Defendants do not dispute that retroactive application of HB2106 would be unconstitutional. ....................................................................................................... 7

          D.    The amici provide no basis to save HB2106. .......................................................... 8

    III.  The remaining factors weigh in favor of a preliminary injunction. .................................. 10

CONCLUSION ............................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)
**CASES**

*American Petroleum Institute v. EPA*,
  683 F.3d 382 (D.C. Cir. 2012) .................................................................................... 3

*Animal Legal Def. Fund v. Kelly*,
  9 F.4th 1219 (10th Cir. 2021) ..................................................................................... 4

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004) ................................................................................................ 4, 5

*Awad v. Ziriax*,
  670 F.3d 1111 (10th Cir. 2012) .................................................................................. 2

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) .................................................................................................... 3

*Bernal v. Fainter*,
  467 U.S. 216 (1984) .................................................................................................... 6

*Bluman v. FEC*,
  800 F. Supp. 2d 281 (D.D.C. 2018) ....................................................................... 7, 9

*Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.*,
  660 F. App'x 600 (10th Cir. 2016) ........................................................................... 10

*Cent. Me. Power Co. v. Me. Comm'n on Govt'l Ethics & Elections Pracs.*,
  721 F. Supp. 3d 31 (D. Me. 2024) .......................................................................... 5, 9

*Citizens United v. FEC*,
  558 U.S. 310 (2010) ............................................................................................ 6, 8, 9

*City & Cnty. of S.F. v. EPA*,
  604 U.S. ----, 145 S. Ct. 704 (2025) .......................................................................... 7

*Counterman v. Colorado*,
  600 U.S. 66 (2023) .................................................................................................. 6, 7

*FEC v. Cruz*,
  596 U.S. 289 (2022) .................................................................................................... 5

*First Nat'l Bank of Bos. v. Bellotti*,
 435 U.S. 765 (1978) .................................................................................................. 6, 8

*Fresh Vision OP, Inc. v. Skoglund*,
 No. 24-4055-DDC-TJJ, 2025 WL 26693 (D. Kan. Jan. 3, 2025) ......................................... 1

*Initiative & Referendum Inst. v. Walker*,
 450 F.3d 1082 (10th Cir. 2006) ............................................................................................ 3

*Kan. Judicial Review v. Stout*,
 519 F.3d 1107 (10th Cir. 2008) ......................................................................................... 2, 3

*Koontz v. Watson*,
 283 F. Supp. 3d 1007 (D. Kan. 2018) ................................................................................ 2, 3

*McCutcheon v. FEC*,
 572 U.S. 185 (2014) ................................................................................................................ 6

*Minn. Chamber of Com. v. Choi*,
 765 F. Supp. 3d 821 (D. Minn. 2025) ......................................................................... 5, 6, 9

*Moser v. State Dep't of Revenue*,
 289 Kan. 513 (2009) ............................................................................................................... 2

*New Mexicans for Bill Richardson v. Gonzales*,
 64 F.3d 1495 (10th Cir. 1995) ............................................................................................... 3

*Pryor v. Sch. Dist. No. 1*,
 99 F.4th 1243 (10th Cir. 2024) ............................................................................................ 10

*Sampson v. Buescher*,
 625 F.3d 1247 (10th Cir. 2010) ............................................................................................. 6

*Towne v. Unified Sch. Dist. No. 259*,
 318 Kan. 1 (2024) ............................................................................................................... 2, 4

*Wyo. Gun Owners v. Gray*,
 83 F.4th 1224 (10th Cir. 2023) ............................................................................................... 5

*Yes on Term Limits, Inc. v. Savage*,
 550 F.3d 1023 (10th Cir. 2008) ............................................................................................. 4

**STATUTES**

K.S.A. §21-5111(x) .................................................................................................................. 7

K.S.A. §25-4180(a) ............................................................................................................... 5

K.S.A. §25-4180(a)(1) .................................................................................................... 7, 8, 9

K.S.A. §25-4180(a)(2) ....................................................................................................... 7, 8

K.S.A. §25-4180(b) ............................................................................................................ 7, 8

K.S.A. §25-4180(c) ............................................................................................................ 7, 8

K.S.A. §25-4180(d)(1) .......................................................................................................... 10

K.S.A. §25-4180(d)(2) ............................................................................................................ 7

**INTRODUCTION**

Defendants do not meaningfully dispute that HB2106 is overbroad, vague, and fails narrow tailoring. In fact, Defendants effectively concede that they cannot tell the Court what the law means—or what it prohibits—and dedicate most of their response to arguing that the Court should not decide anything until Defendants have concluded exactly what speech they think HB2106 prohibits. At the same time, Defendants do not dispute that the action KCF takes now is subject to the restrictions of the statute. And they have no coherent answer to the fact that, unless enjoined, HB2106 will *silence* KCF's issue advocacy. First Amendment precedent establishes that this chill in and of itself makes the issue ripe for adjudication, and Defendants' inability to clearly state what HB2106 requires—much less demonstrate to the Court that KCF will *not* be penalized for engaging in core protected First Amendment activity—only further supports Plaintiff's claims. Defendants' contention that there is no harm because they are not *yet* doing anything to enforce the law also proves that Kansas would suffer no harm if HB2106 were preliminarily enjoined as Defendants continue to consider what the law means. In light of binding case law on the merits and these lopsided equities, the Court should grant KCF's motion for a preliminary injunction.

**ARGUMENT**

**I.      KCF's claims are prudentially ripe.**

Defendants offer no argument in response to KCF's vagueness and overbreadth claims. They acknowledge that "the first step" in this analysis "is to assess the state law's scope. What activities, by what actors, do the laws prohibit or otherwise regulate?" Opp. at 6 (quoting *Fresh Vision OP, Inc. v. Skoglund*, No. 24-4055-DDC-TJJ, 2025 WL 26693, at *6 (D. Kan. Jan. 3, 2025)). But they make no effort to answer that question, arguing instead that the issue is "prudentially unripe" because the Commission has not yet issued regulations interpreting HB2106. The fact that the regulatory body charged with implementing HB2106 has not yet come to a view

1

on how the statute applies is itself strong evidence that it is unconstitutionally vague. But in any event, clear Tenth Circuit precedent forecloses Defendants' prudential ripeness argument.

Courts in this Circuit analyze prudential ripeness by examining "the fitness of the issues raised for judicial review and the hardship to the parties from withholding review." *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (cleaned up). On fitness, the question is "whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed." *Id.* (cleaned up). Facial challenges "are generally considered to be strictly legal questions that do not involve the application of the law in a specific factual setting." *Id.* (cleaned up). As-applied challenges are similarly fit for review "if 'the facts of the case are relatively uncontested.'" *Koontz v. Watson*, 283 F. Supp. 3d 1007, 1017 (D. Kan. 2018) (quoting *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1118 (10th Cir. 2008)). As to hardship, courts ask "whether the [challenged action] creates a direct and immediate dilemma for the parties." 670 F.3d at 1125 (internal quotation marks omitted). Both elements are satisfied here.

*First*, the merits here turn upon "strictly legal issues." *Id.* at 1124. Defendants do not identify any facts that need to be further developed—they contend that the *interpretation of HB2106* needs to be further developed. But in Kansas, "[i]ssues of statutory interpretation raise pure questions of law." *Moser v. State Dep't of Revenue*, 289 Kan. 513, 516 (2009). Furthermore, no interpretive guidance from the Commission can cure the overbreadth and vagueness inherent in the plain language of HB2106. When interpreting a statute, "[o]rdinary words should be given their ordinary meaning." *Id.* And the Kansas Supreme Court has "repeatedly and explicitly rejected the doctrine of deferral to agency interpretations of either statutes or regulations." *Towne v. Unified Sch. Dist. No. 259*, 318 Kan. 1, 8 (2024). Indeed, Defendants "readily admit … that an advisory

2

opinion—or even rulemaking—*will not resolve* the core constitutional question presented[.]" Mot. to Dismiss at 9–10, ECF No. 28 (emphasis added). The issues raised are thus plainly fit for review.

*Second*, HB2106, "by its very existence, chills the exercise of the Plaintiffs' First Amendment rights," thus "[t]he ripeness challenge fails here because the Plaintiffs' alleged injury is already occurring." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1098 (10th Cir. 2006); *see also Koontz*, 283 F. Supp. 3d at 1015 (quoting *Stout*, 519 F.3d at 1116) (noting in a First Amendment facial challenge, "the ripeness analysis is relaxed somewhat because an unconstitutional law may chill free speech" (cleaned up)). Defendants ask this Court to find that KCF must wait for them to decide what HB2106 means before it may sue to redress the ongoing chill of its First Amendment rights, *but in the meantime* KCF must conform its behavior to the plain language of the statute or risk future prosecution. The Tenth Circuit has been clear: a party challenging the constitutionality of such a statute "should not be expected to pursue their collective activities at their peril." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1503 (10th Cir. 1995) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 303 (1979)). This is all the more so because where, as here, "the challenged statute is unconstitutionally vague, that vagueness 'greatly militates in favor of finding an otherwise premature controversy to be ripe.'" *Koontz*, 283 F. Supp. 3d at 1016 (quoting *Stout*, 519 F.3d at 1118).

Defendants conspicuously cite no precedent for their "wait and see" approach. In the only prudential ripeness case they cite—*American Petroleum Institute v. EPA*, 683 F.3d 382 (D.C. Cir. 2012)—the D.C. Circuit held that a challenge to a *federal regulation* was prudentially unripe in light of "a notice of proposed rulemaking that, if made final, would *significantly amend*" the challenged regulation. *Id.* at 384 (emphasis added). Here, Defendants do not even hint at what "rules and regulations" the Commission might be considering, let alone explain how those

3

regulations could possibly "significantly amend" HB2106 in a way that might cure its constitutional defects and protect KCF against penalty for engaging in core First Amendment activity. Nor have they even said *when* they might promulgate such regulations. Even if the Commission could somehow narrow the plain meaning of HB2106 through administrative rulemaking, *but see Towne*, 318 Kan. at 8, Defendants offer no assurances that any forthcoming administrative action will have *any* bearing on KCF's claims.

## II.   KCF is likely to succeed on its claims under the First and Fourteenth Amendments.

### A.  Defendants fail to show that HB2106 survives strict scrutiny.

Defendants do not dispute that HB2106, as a content-based restriction on political speech, is subject to strict scrutiny. Opp. at 10–12. It therefore is "presumptively unconstitutional." *Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219, 1227 (10th Cir. 2021). To overcome that presumption, Defendants must show *both* that HB2106 is justified by a "compelling interest" *and* that it is "narrowly tailored." *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008).

The Court may grant the preliminary injunction based on Defendants' failure to show that HB2106 is narrowly tailored alone. The sum total of Defendants' argument on the issue consists of a few sentences in which they assert that, because constitutional advocacy is closely connected with "democratic self-government," and because HB2106 restricts foreign national spending related to constitutional advocacy, the law is "tailored" to "protecting the sovereignty of the people of Kansas." Opp. at 12. Those entirely conclusory assertions would hardly satisfy rational basis review, let alone strict scrutiny. A law restricting political speech is not narrowly tailored simply because the State can point to *some* connection between the law and the purported interest. The test is whether the State has "ensure[d] that speech is restricted *no further than necessary* to achieve [its] goal." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004) (emphasis added). As KCF explained, and Defendants do not contradict, HB2106 is both substantially overinclusive and substantially

4

underinclusive. Mot. at 10–14. Among other things, if a person or entity takes even a single prohibited dollar from a foreign national, HB2106 bars them from engaging in "any activity" "promoting or opposing" a constitutional amendment. Mot. at 11; *see* K.S.A. §25-4180(a). If "narrow tailoring" is to have any meaning, it cannot be that a State has free rein to take away the free speech rights of any individual or entity that has *any* financial association with a foreign national, regardless of how attenuated the connection may be. *See Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1247 (10th Cir. 2023) ("Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms."). And at the same time that HB2106 prohibits an enormous amount of protected speech, it fails to prohibit more direct instances of foreign national influence. *See* Mot. at 13–14.

Kansas also fails to show that HB2106 is the "least restrictive means" to accomplish its goal. *Ashcroft*, 542 U.S. at 666. A current federal regulation provides a model that Kansas could have followed to accomplish its goal without unnecessarily prohibiting a vast amount of political speech. *See* Mot. at 14. Kansas offers no response. And because Kansas fails to show that HB2106 is narrowly tailored, the Court need not address whether the State has a compelling interest in limiting foreign national influence on ballot measures. Two federal courts recently enjoined analogous laws on that basis. *See Minn. Chamber of Com. v. Choi*, 765 F. Supp. 3d 821, 853–56 (D. Minn. 2025) (enjoining law that prohibited the political speech of corporations with low levels of foreign ownership because it was not narrowly tailored); *Cent. Me. Power Co. v. Me. Comm'n on Govt'l Ethics & Elections Pracs.*, 721 F. Supp. 3d 31, 52–53 (D. Me. 2024) (similar).

But if the Court addresses the question, it should find that HB2106 is not supported by a compelling interest. The Supreme Court has recognized "only one" justifiable interest in limiting political speech: preventing *quid pro quo* corruption or its appearance. *E.g.*, *FEC v. Cruz*, 596 U.S.

5

289, 305 (2022) ("We have consistently rejected attempts to restrict campaign speech based on other legislative aims."). Kansas does not (and cannot) argue that HB2106, which applies to ballot measures and not candidate elections, can be justified on that basis. *See, e.g.*, *Sampson v. Buescher*, 625 F.3d 1247, 1255 (10th Cir. 2010) ("Limits on contributions to ballot-issue committees … are unconstitutional because of the absence of any risk of quid pro quo corruption."). Instead, Kansas relies on a purported interest in limiting foreign national influence in its elections. Opp. at 10. But the Supreme Court has stated that a law "would be overbroad" in violation of the First Amendment if (like HB2106) it applied to corporations and associations beyond those "created in foreign countries or funded predominately by foreign shareholders." *Citizens United v. FEC*, 558 U.S. 310, 362 (2010). And innumerable decisions of the Supreme Court reiterate the fundamental point that "[t]he First Amendment rejects the 'highly paternalistic' approach of statutes … which restrict what the people may hear." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 791 n.31 (1978); *see also, e.g.*, *Citizens United*, 558 U.S. at 340–41, 356; *McCutcheon v. FEC*, 572 U.S. 185, 206 (2014).

The "political function" cases cited by Defendants, Opp. at 11, do not support a compelling interest in limiting voters' right to hear speech associated with foreign nationals. Those cases have nothing to do with restricting *speech*; instead, they set out a narrow exception that lowers the standard of review for equal protection claims based on citizenship classifications when an individual performs certain *governmental functions*. *Bernal v. Fainter*, 467 U.S. 216, 220 (1984); *see also Choi*, 765 F. Supp. 3d at 849 (rejecting state's reliance on similar case, noting "it is difficult to understand how" those equal protection cases can apply to "free-speech challenges").

### B. HB2106 lacks a constitutionally required *mens rea* element.

K.S.A. §25-4180(d) is further unlawful because it infringes speech without a constitutionally required *mens rea* element, *Counterman v. Colorado*, 600 U.S. 66 (2023).

6

Defendants' arguments to the contrary are either incorrect or irrelevant. Defendants principally argue that subsection (d) is constitutional because it imposes only civil, not criminal, liability. That is wrong. The law states "[t]he attorney general may *prosecute* any person who violates this subsection," K.S.A. §25-4180(d)(2) (emphasis added), and the Kansas criminal code defines "prosecution" as "all legal proceedings by which a person's liability for a crime is determined." *Id.* §21-5111(x). Regardless, the principle applied in *Counterman* applies to both civil and criminal liability. 600 U.S. at 76, 80. Defendants also suggest that subsection (d) *does* require a scienter element. Opp. at 13. That is also wrong. Subsection (d)(1) was enacted at the same time as multiple other provisions that contain an express "knowingly" requirement. *See* K.S.A. §25-4180(a)(1), (a)(2), (b), (c). The legislature's choice to decline to add *any mens rea* element to subsection (d)(1) must be given effect under basic principles of statutory interpretation. *City & Cnty. of S.F. v. EPA*, 604 U.S. ----, 145 S. Ct. 704, 713–14 (2025). But even if the provision were read to contain a *scienter* requirement, Defendants concede that a person could be convicted under the statute based on *recklessness*. Opp. at 13. Liability for speech at the core of the First Amendment's protections requires at least a showing of knowledge or purpose—mere recklessness will not suffice. *See Counterman*, 600 U.S. at 78–81. Nor is *Bluman v. FEC* to the contrary, *see* Opp. at 14, as that case predates *Counterman*, involved a very different statutory scheme, and did not consider a First Amendment challenge to FECA's *mens rea* requirements. 800 F. Supp. 2d 281, 292 (D.D.C. 2011).

### C. Defendants do not dispute that retroactive application of HB2106 would be unconstitutional.

Defendants seem to agree that HB2106 should not apply retroactively, but their confusing interpretation contradicts the plain language of the statute and leaves substantial ambiguity as to whether the State could enforce HB2106 against conduct occurring before its effective date. By its plain terms, HB2106 requires regulated entities to annually certify that they "ha[ve] not knowingly

7

accepted contributions or expenditures … from a foreign national." K.S.A. §25-4180(a)(1). When an entity files the required form in February 2026, *see id.* §25-4180(a)(2), it cannot honestly make that certification if it accepted prohibited funds before July 1, 2025. Similar analysis applies to the four-year lookback provisions appearing throughout the statute. *See id.* §25-4180(a)(2), (b), (c).

In addition, Defendants state that KCF "would … violate" HB2106 if it accepts prohibited funds "for future constitutional advocacy." Opp. at 16. Because KCF has identified a legislatively referred amendment that it wishes to oppose, Kubic Decl. ¶¶10–12, that statement (and Kansas' strained interpretation of HB2106) makes it unclear whether the State believes it could later fine or prosecute KCF under HB2106 for actions taken before the law's effective date. But in any event, Kansas clearly does not dispute that such retroactive application would violate due process. Accordingly, the Court should enjoin Kansas from retroactively applying HB2106.

### D.  The amici provide no basis to save HB2106.

Nor does anything in the amicus brief provide a basis to deny KCF's motion. To the contrary, amici make clear that the driving purpose of HB2106 is *precisely* what *Bellotti* held unconstitutional: the desire of States to exercise the "highly paternalistic" power of "restrict[ing] what the people may hear." 435 U.S. at 791 n.31. Repeatedly, amici express vague concerns about foreign nationals exerting "influence" over voters, "distorting [their] deliberative processes," and making sure voters are not "manipulated." Amicus Br. at 5–6. But what does that actually mean? Neither Kansas nor amici argue any foreign national is *forcing* citizens to vote a certain way; they simply do not like the fact that some voters may hear speech that may have been paid for in part by a foreign national and *agree* with it. But "[t]he Government may not … deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration." *Citizens United*, 558 U.S. at 341. Furthermore, amici make clear that they view HB2106 as broadly restricting political speech by entities as diverse as the ACLU, Planned

8

Parenthood, and the NARAL. Amicus Br. at 13. This alone should be cause for alarm. And while amici wave at alleged Founding-era concerns with foreign "influence," *id.* at 3, 6, the clear implication of their argument is that Kansas could constitutionally prohibit the publication of an op-ed from *The Guardian* (a British newspaper) advocating a vote against the 2022 Amendment. *See also Choi*, 765 F. Supp. 3d at 850–51 (noting the "difficult" questions that would be raised by endorsing a broad, generalized view that states have a compelling interest in preventing foreign influence or its appearance, including whether it could countenance bans on editorials about candidates written by noncitizens or political rallies sponsored by noncitizens). This view is entirely antithetical to the broad marketplace of ideas that the First Amendment is meant to foster. Moreover, nowhere do amici recognize that U.S. citizens might *want* to hear from these different sources to help them decide how to vote, or that they have a constitutional right to do so. *See, e.g.*, *Citizens United*, 558 U.S. at 356.

Amici also misconstrue HB2106. For example, they incorrectly suggest that HB2106 is limited by a $100,000 threshold limit (over four years) in funds from foreign sources *for* "*express advocacy purposes*." Amicus Br. at 4 (emphasis added). This is not what the statute says. *See* K.S.A. §25-4180(a)(1) (restricting individual or entity from engaging in any constitutional issue advocacy if they receive *a single dollar* from a foreign national, for *any purpose*). This alone distinguishes HB2106 from other laws cited by amici. For example, the Federal Election Campaign Act does not purport to bar an entity from *all* political advocacy if it takes a single dollar from a foreign national. Moreover, it is limited to *candidate* elections, not issue advocacy, a point emphasized by then-Judge Kavanaugh in *Bluman*. 800 F. Supp. 2d at 292. Moreover, two federal courts recently enjoined state laws that are less sweeping than HB2106. *See Choi*, 765 F. Supp. 3d at 853–56; *Cent. Me. Power Co.*, 721 F. Supp. 3d at 52–53.

9

**III.     The remaining factors weigh in favor of a preliminary injunction.**

Because HB2106 violates KCF's First Amendment rights, irreparable injury is not just presumed, *contra* Opp. at 18 (citing *Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.*, 660 F. App'x 600, 603 (10th Cir. 2016) (unpublished)), it is conclusively established. *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1254 (10th Cir. 2024) ("[A]ny potential loss of First Amendment freedoms—however small—also establishes irreparable injury[.]"). For the same reasons, the balance of hardships and the public interest weigh decisively in KCF's favor. "A governmental interest in upholding a mandate that is likely unconstitutional does not outweigh a movant's interest in protecting his constitutional rights." *Id.*

Defendants suggest KCF suffers no harm because it remains free to engage in constitutionally protected speech—so long as it does not accept contributions and expenditures from foreign nationals "made for any activity promoting or opposing the adoption or repeal of" constitutional ballot propositions. Opp. at 18 (quoting K.S.A. §25-4180(d)(1)). They also claim that KCF "has no present reporting obligations under section 25-4180(a)." *Id.* at 19. Defendants are wrong on both counts. HB2106, by its plain terms, requires any entity that engages in protected speech for or against a constitutional amendment after July 1, 2025 to annually certify that it has not accepted any contributions from foreign nationals. *See supra* II.C. Because KCF cannot make that certification, it cannot engage in protected advocacy after July 1—whether the certification is due "eight months from now," Opp. at 19, or eight days from now. No interest is more "compelling" and "utterly foundational," *id.*, than redressing this clear First Amendment violation.

## CONCLUSION

For the foregoing reasons, the Court should preliminarily enjoin HB2106.

10

Dated: June 20, 2025						Respectfully submitted,


								/s/ *Nicole Revenaugh*
								Pedro L. Irigonegaray (#08079)
								Nicole Revenaugh (#25482)
								**IRIGONEGARAY & REVENAUGH**
								1535 S.W. 29th Street
								Topeka, KS 66611
								(785) 267-6115
								pedro@itrlaw.com
								nicole@itrlaw.com

								Elisabeth C. Frost* (D.C. 1007632)
								Joshua C. Abbuhl* (D.C. 1044782)
								Richard A. Medina* (D.C. 90003752)
								**ELIAS LAW GROUP LLP**
								250 Massachusetts Ave. NW, Suite 400
								Washington, D.C. 20001
								Telephone: 202-968-4490
								efrost@elias.law
								jabbuhl@elias.law
								rmedina@elias.law

								*Attorneys for Plaintiff*
								*\* Pro hac vice*

11