## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KANSANS FOR CONSTITUTIONAL FREEDOM,**

**Plaintiff**,

v.

**KRIS KOBACH, et al.**,

**Defendants**.

**Case No. 25-2265-DDC-GEB**

## <u>MEMORANDUM AND ORDER</u>

This case revolves around a recent amendment to the Kansas Campaign Finance Act (KCFA)—House Bill 2106.  The bill includes enhanced campaign-finance reporting and certifying requirements.  It also limits contributions and expenditures by foreign nationals on constitutional ballot propositions, among other things.  Plaintiff here, Kansans for Constitutional Freedom (KCF), asserts that HB 2106 violates its First and Fourteenth Amendment rights.  The court already weighed in on the constitutionality questions in its earlier Order (Doc. 40) denying plaintiff's request for a preliminary injunction.  Now, the court rules defendants' pending Motion to Dismiss (Doc. 28).  This motion contends the court should dismiss the case—or hold it in abeyance—because of prudential-ripeness concerns.  To resolve it, the court needn't revisit the constitutionality questions or delve deeply in HB 2106.  Instead, the court must decide simply whether this case qualifies as prudentially unripe.  It doesn't.

The court previewed this result in its earlier Order.  Doc. 40 at 35–36.  When that Order issued, the briefing on defendants' Motion to Dismiss (Doc. 28) hadn't yet concluded.  And the

court rushed the preliminary injunction Order so it could rule before the challenged law took

effect on July 1, 2025. So, the court offered a "truncated analysis" of defendants' prudential-

ripeness arguments, sufficient for the court to proceed—at the preliminary injunction stage—

without any prudential-ripeness concerns. *Id.* at 36. It reserved its ruling on defendants'

ripeness motion until it could complete a more fulsome analysis in light of the parties' full

briefing. The promised fulsome analysis follows. But first, the court provides a brief overview

of the case's factual background.

I.       **Background Facts[1]**

The court recites the following background facts from the Complaint. The court accepts

the Complaint's facts as true, and views them in the light most favorable to plaintiff—the party

who opposes the Motion to Dismiss. *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir.

2020).

### *Kansans for Constitutional Freedom*

KCF is a Kansas-based, domestic non-profit who has advocated—and wants to continue

advocating—to support or oppose amendments to the Kansas constitution. Doc. 1 at 4, 9

(Compl. ¶¶ 5, 22). A bipartisan coalition of reproductive-rights advocates and allied

organizations formed KCF in 2021. *Id.* at 9 (Compl. ¶ 22). They created KCF to oppose a

proposed Kansas constitutional amendment about the constitutional right to an abortion in the

state. *Id.* KCF spent more than $11 million opposing that abortion amendment leading up to the

---

[1]       The court assumes familiarity with the underlying legislation—HB 2106—and the constitutional
challenges in this case. The court recited the factual background and explained the relevant portions of
HB 2106 in its earlier Order. *See* Doc. 40 at 2–6. The court thus provides an abbreviated overview—
commensurate with what's required to understand the current motion-to-dismiss issues—and refers
readers interested in a more thorough recitation of the facts to its earlier Order.

August 2, 2022, election. *Id.* (Compl. ¶ 23). Some of those expenditures came from so-called "foreign-backed funds." *Id.* at 18 (Compl. ¶ 72).

In the immediate future, KCF would like to spend funds to oppose another recently proposed amendment to the Kansas Constitution—Senate Concurrent Resolution (SCR) 1611. *Id.* at 9, 16 (Compl. ¶¶ 24, 63). SCR 1611 would amend the current selection process for justices on the Kansas Supreme Court, replacing it with partisan elections. *Id.* at 16 (Compl. ¶ 64). But, KCF asserts, recently enacted HB 2106 will hinder or halt its planned SCR 1611 advocacy. *Id.* at 2, 9–10, 17 (Compl. ¶¶ 1, 24, 71).

### *HB 2106*

HB 2106 restricts issue-advocacy speech in ways—proponents of the bill argued—that are "necessary to protect against foreign interests influencing . . . voters as they decide whether to approve or reject proposed constitutional amendments." *Id.* at 2–3 (Compl. ¶¶ 1, 3). Specifically, HB 2106 requires organizations engaging in constitutional issue advocacy to certify that

> (1) they have not knowingly accepted contributions or expenditures directly or indirectly from a foreign national at any time or for any purpose . . . and (2) none of the donors that contributed to them for the purpose of engaging in constitutional issue advocacy has knowingly accepted, directly or indirectly, any contributions or expenditures from foreign nationals above a certain threshold for any purpose within a four-year period[.]

*Id.* at 5 (Compl. ¶ 7) (first citing Kan. Stat. Ann. § 25-4180(a)(1); and then citing *id.* § 25-4180(a)(2)). HB 2106 also "prohibits anyone from making independent expenditures to support or oppose a Kansas constitutional ballot measure if they have accepted 'any moneys' from any foreign national" subject to certain time and threshold constraints. *Id.* (Compl. ¶ 8) (emphasis omitted) (citing Kan. Stat. Ann. § 25-4180(c)). KCF asserts these requirements and restrictions

make "unconstitutional attacks on core First Amendment rights[.]" *Id.* at 6 (Compl. ¶ 9). So, KCF filed this lawsuit challenging the constitutionality of HB 2106.

### *KCF's Suit*

KCF asserts that HB 2016 "will muzzle the speech of U.S. citizens and domestic organizations far more effectively than that of the foreign nationals Kansas claims it means to target[,]" including KCF's speech. *Id.* at 4 (Compl. ¶¶ 4–5). And it contends, HB 2106 will chill protected speech significantly, "making even U.S. citizens reluctant to associate with or collaborate on ballot issue advocacy with anyone who might be believed to be a noncitizen." *Id.* at 5 (Compl. ¶ 6). So, KCF's suit here asserts facial and as-applied challenges to HB 2106 under several constitutional theories: HB 2106 infringes free speech; infringes associational rights; imposes criminal liability without a *mens rea* requirement; is overly broad; is void for vagueness; and violates the due process clause. *Id.* at 29–50 (Compl. ¶¶ 105–94).

Before the court is defendants' Motion to Dismiss (Doc. 28) premised on prudential ripeness. The court denies the motion, finding none of the three prudential-ripeness factors indicate that the case is unripe. The court explains its conclusion, below. But first, it recites the relevant legal standard.

## II.       Legal Standard

A court properly analyzes motions to dismiss for prudential ripeness under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1), because prudential ripeness "does not implicate subject matter jurisdiction." *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1230 (10th Cir. 2021). Rule 12(b)(6) allows a party to move to dismiss an action for failing "to state a claim upon which relief can be granted[.]" For a complaint to survive a Rule 12(b)(6) motion, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).

When deciding a Rule 12(b)(6) motion to dismiss, the court must assume that the

complaint's factual allegations are true, but it is "'not bound to accept as true a legal conclusion

couched as a factual allegation[.]'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  And, while this

pleading standard doesn't require "'detailed factual allegations,'" it demands more than a

"pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action'" which, the Supreme Court has explained, "'will not do.'"  *Id.* (quoting

*Twombly*, 550 U.S. at 555).

III.    **Analysis**

Defendants argue that this case is prudentially unripe because the Kansas Governmental

Ethics Commission (KGEC) "has yet to engage in rulemaking or promulgate other guidance to

implement HB 2106's requirements."  Doc. 28 at 3.  The Kansas legislature delegated authority

to the KGEC to implement the KCFA, of which HB 2106 is a part.  *Id.* at 8.  Defendants contend

that challenging "a statutory enactment before the agency tasked with its implementation has an

opportunity to review the statute and adopt rules, regulations, and other guidance presents basic

prudential ripeness concerns."  *Id.* at 7.  KCF disagrees.  It invokes the "'virtually unflagging

obligation'" federal courts have to exercise the jurisdiction given to them.  Doc. 33 at 10

(quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  And

KCF highlights the caution with which courts should rely on prudential ripeness—as opposed to

constitutional ripeness—to find claims nonjusticiable.  *Id.* (citing *Susan B. Anthony List v.

Driehaus*, 573 U.S. 149, 167 (2014)).  Finally, KCF argues that this case satisfies all the

elements relevant to the prudential-ripeness inquiry.  *Id.* at 11.

This ripeness doctrine draws "both from 'Article III limitations on judicial power' and 'prudential reasons for refusing to exercise jurisdiction.'" *Utah Republican Party v. Cox*, 892 F.3d 1066, 1092 (10th Cir. 2018) (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010)). "Prudential ripeness is traditionally considered through the two-prong test established in *Abbott [Laboratories] v. Gardner*, 387 U.S. 136, 149 (1967), under which courts assess (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Id.* (quotation cleaned up). Our Circuit routinely adds a third element in the context of First Amendment facial challenges like this one. This third component considers "'the chilling effect the challenged law may have on First Amendment liberties[.]'" *Kan. Jud. Rev. v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (quoting *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)).

Other considerations also come into play when applying these three prongs. Our Circuit also relaxes the ripeness analysis "somewhat" when a First Amendment challenge is at issue. *Stout*, 519 F.3d at 1116 (quotation cleaned up). "[A]s a general matter, First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss." *Id.* (quotation cleaned up). Finally, the plaintiff "bears the burden of showing that its claims are prudentially ripe for judicial review." *N. Mill St.*, 6 F.4th at 1230.

With these principles in mind, the court evaluates defendants' ripeness challenge by evaluating each of the three ripeness elements in turn. The court's analysis starts with fitness for judicial decision.

### A.    Fitness for Judicial Decision

Defendants argue that this case is not fit for review because the KGEC hasn't had the opportunity to interpret HB 2106 yet. Doc. 28 at 8–9. Not only would court review usurp

KGEC's authority, a judicial ruling, defendants contend, would raise substantial federalism concerns. *Id.* KCF responds that defendants identify KGEC's need to interpret HB 2106—but not any need to develop contingent future facts. Doc. 33 at 11. And, KCF asserts, courts withhold review when facts require developing, not when the merits of a claim "turn upon 'strictly legal issues.'" *Id.* (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012)). KCF has the better of this argument.

"'A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Utah Republican Party*, 892 F.3d at 1092 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). But facial challenges "are generally considered to be strictly legal questions that do not involve the application of the law in a specific factual setting." *Awad*, 670 F.3d at 1124 (quotation cleaned up). "And even when a case presents an as applied challenge, it is fit for judicial review if 'the facts of the case are relatively uncontested.'" *Koontz v. Watson*, 283 F. Supp. 3d 1007, 1017 (D. Kan. 2018) (quoting *Stout*, 519 F.3d at 1118). What's more, our Circuit's case law "encourages particular lenience in First Amendment ripeness inquiries." *Peck v. McCann*, 43 F.4th 1116, 1134 (10th Cir. 2022).

Here, KCF asserts facial and as-applied challenges, arguing that HB 2106 infringes its First and Fourteenth Amendment rights to free speech and association, as well as bringing overbreadth and vagueness challenges. Doc. 1 at 29–37, 41–47 (Compl. ¶¶ 105–37, 154–80). The facial aspect of these challenges don't require any further factual development. *See Awad*, 670 F.3d at 1124 (explaining that facial challenges are generally "strictly legal questions" not requiring a court to apply the law "in a specific factual setting" (quotations cleaned up)). And the only factual contingencies identified by defendants' motion on the as-applied front are the KGEC's interpretation of HB 2106. Doc. 28 at 8–9. But, as the court already concluded, none

of KGEC's interpretive or administrative tasks—such as developing forms or instructions to implement HB 2106—can nullify HB 2106's core requirements. *See* Doc. 40 at 36. So, developing these forms and instructions, or other KGEC tasks, don't qualify as contingent future events sufficient to preclude judicial review of KCF's as-applied challenge.

Trying another tack in their Reply, defendants lean into *Utah Republican Party*. They embrace that case and argue that contingencies foreclosing review nonetheless persist here. Doc. 39 at 4–5. In *Utah Republican Party*, our Circuit identified contingent future events that precluded it from assessing an appropriate remedy on prudential-ripeness grounds. 892 F.3d at 1092. There, the contingent future events rested on how the Utah Republican Party (URP) would choose to act in the face of Utah Senate Bill 54 (SB 54). *Id.* SB 54 created two types of political parties and differentiated how those party types could qualify candidates for primary elections. *Id.* at 1073. The Circuit refused to consider what remedy would follow if the URP chose to "flout the dictates of SB54." *Id.* at 1092–93. The court of appeals decided it was premature to assess the appropriate remedy where the URP "ha[d] offered conflicting statements during the course of [the] litigation about its intention to comply with SB54." *Id.* at 1092. As a result, it was "unclear whether the URP, if it were to lose its challenge to SB54's constitutionality, would enforce its constitution and bylaws." *Id.* So, that contingent future event—*i.e.*, how the URP would respond to SB 54—counseled judicial restraint on the remedy question.

But that's not this case. Defendants here contend that the contingencies in *Utah Republican Party* "are precisely the sort of considerations counseling a finding that Plaintiff's challenge to HB 2106 [is] not yet fit for judicial review." Doc. 39 at 5. That's just not right. KCF has asked the court to evaluate the facial and as-applied constitutionality of the statute—not

a remedy that would apply if KCF violates the statute. The statute's constitutionality doesn't turn on what KCF chooses to do or not do in response to HB 2106 in the future. So, the contingent future events warranting judicial restraint in *Utah Republican Party*—all premised on how the URP would act in the face of SB 54—don't transfer directly to this case's challenge. Indeed, our Circuit explicitly characterized the prudentially unripe issue in *Utah Republican Party* as a question of remedy. 892 F.3d at 1093 ("Given this uncertainty, we cannot conclude that *the issue of what remedy is appropriate* when a political party's constitution and bylaws contravene state law is prudently fit at this time for judicial consideration before this court." (emphasis added)).

To be sure, *Utah Republican Party* also included constitutional questions that parallel those presented here. Namely, the URP argued that Utah's SB 54 infringed URP's First Amendment right of association. But the district court decided that constitutional challenge—finding no infringement. *Id.* at 1075. And the Circuit affirmed, never expressing any prudential-ripeness concerns. *Id.* at 1076. In short, in *Utah Republican Party* the question of remedy if an entity violated the statute was unripe. But the constitutional challenge was ripe—creating two different buckets with two different ripeness results. This case falls into the second bucket—the constitutional challenge, not the remedy. Defendants' argument premised on *Utah Republican Party* that this controversy isn't fit for judicial review thus misses the mark. The court turns next to the second prudential-ripeness factor—hardship to the parties.

### B.    Hardship to the Parties

Defendants assert that KCF would suffer little if this suit got dismissed. Doc. 39 at 6. It should come as no surprise that KCF claims dismissal would cause it significant, immediate hardship. Doc. 33 at 15. KCF again has the better argument.

"In assessing hardship, [courts] typically focus on whether the challenged action creates a direct and immediate dilemma for the parties." *McCann*, 43 F.4th at 1134 (quotation cleaned up). Our Circuit's analysis in *Kansas Judicial Review v. Stout* proves instructive to assess this factor. In *Stout*, judicial candidates in Sedgwick County, Kansas had received a questionnaire "designed to elicit their views on a variety of legal and political issues." 519 F.3d at 1112. Advisory opinions from the Judicial Ethics Advisory Panel (JEAP)—an entity created by the Kansas Supreme Court "to provide non-binding ethical 'guidance' to persons subject to the" judicial ethics code—advised candidates not to answer based on the Kansas Code of Judicial Conduct Canons. *Id.* at 1112, 1113. Plaintiffs thus claimed that the three relevant clauses of the Canons were unconstitutional—facially and as-applied—because they infringed on judicial candidates' First Amendment rights of political expression. *Id.* at 1111, 1112.

When assessing whether withholding judicial review would produce a hardship to the parties, the Circuit asked whether the Canons created "'a direct and immediate dilemma for the parties.'" *Id.* at 1117 (quoting *Richardson*, 64 F.3d at 1500). The judicial candidates asserted that "they face[d] such a dilemma, because they must choose not to speak, and thereby sacrifice their First Amendment rights, or do so and potentially run afoul of the judicial canons." *Id.* In other words, "both the plain language of the Canons and the interpretations of those Canons by JEAP create a chilling effect on candidate speech." *Id.* Assuming that the candidates' legal argument was correct and that the Canons applied to the conduct in question, the Circuit found a "direct and immediate dilemma." *Id.* In reaching this conclusion, the Circuit noted that plaintiffs had altered their behavior in response to the Canons. *Id.* The Circuit thus concluded that one of the plaintiffs "face[d] a direct and immediate dilemma regarding how he will conduct

his campaign." *Id.* And it compared that altered behavior to the immediate dilemma it found in

an earlier Tenth Circuit case, *New Mexicans for Bill Richardson v. Gonzales. Id.*

In *Richardson*, New Mexico had enacted legislation prohibiting the use—in a state

election campaign—of contributions solicited for or received in a federal election campaign. 64

F.3d at 1497. Congressman Bill Richardson, a United States Representative for the state of New

Mexico, and his principal campaign committee filed suit, asserting a facial violation of the First

Amendment. *Id.* When evaluating a ripeness challenge to the suit, our Circuit concluded that

the statute had "created a direct and immediate dilemma regarding Congressman Richardson's

fund raising abilities." *Id.* at 1501. The Circuit defined that dilemma this way: "[T]he New

Mexico statute has caused Congressman Richardson to engage in the activity of fund raising

differently than he has in the past[.]" *Id.* at 1500.

KCF faces a similar dilemma here. In the past—specifically, leading up to the August 2,

2022, Kansas election—KCF spent more than $11 million opposing the 2022 Kansas

constitutional amendment affecting abortion rights. Doc. 1 at 9 (Compl. ¶ 23). And KCF

intends to oppose Kansas's SCR 1611, a proposed constitutional amendment about the current

judicial selection process in Kansas. *Id.* at 16 (Compl. ¶ 62). "SCR 1611 will be presented to

Kansas voters in a special election scheduled for August 4, 2026." *Id.* at 17 (Compl. ¶ 67). "But

HB 2106 directly threatens KCF's ability to engage in these planned advocacy efforts." *Id.*

(Compl. ¶ 68). Specifically, some of KCF's donors "would be unwilling or unable to provide

KCF with the information necessary" for KCF to comply with HB 2106. *Id.* at 26 (Compl. ¶ 97).

Indeed, KCF contends, the Legislature intended to create this funding dilemma for KCF. *Id.* at

18 (Compl. ¶ 72). KCF asserts that the Kansas legislature passed HB 2106, at least in part,

because "'foreign-backed funds' contributed to KCF" had defeated the 2022 abortion

amendment. *Id.*

Taking these factual allegations as true—as the court must at the motion-to-dismiss

stage—HB 2106 creates a "direct and immediate dilemma for" KCF. *McCann*, 43 F.4th at 1134

(quotation cleaned up). Like the judicial candidates in *Stout*, HB 2106 requires KCF to alter its

behavior. 519 F.3d at 1117. And like the Congressman in *Richardson*, HB 2106 requires KCF

"'to engage in the activity of fund raising differently than [it] has in the past[.]'" 64 F.3d at

1500. KCF must choose whether to abide by HB 2106 or continue raising funds as it did when it

opposed Kansas's abortion amendment. This choice suffices to demonstrate a direct and

immediate dilemma. KCF, therefore, "has established the necessary hardship to overcome

prudential ripeness concerns." *Awad*, 670 F.3d at 1125.

### C.    Chilling Effect

The final factor of the prudential-ripeness analysis in the First Amendment context is the

chilling effect on speech. Neither party's briefing independently addresses this final factor.

Defendants don't reference it at all. *See generally* Doc. 28 (neglecting to use word "chilling" or

"chill" in their motion); Doc. 39 (neglecting to use the word "chilling" or "chill" in their Reply).

KCF lumps it in with the hardship analysis under the second factor. *See, e.g.*, Doc. 33 at 5

("[C]lear Tenth Circuit precedent establishes that withholding judicial review at this stage will

cause unacceptable hardship to KCF by chilling the exercise of its First Amendment rights."); *id.*

at 15 ("KCF and other regulated entities face a direct and immediate dilemma because HB 2106

by its very existence, chills the exercise of the Plaintiffs' First Amendment rights." (quotation

cleaned up)). But the Tenth Circuit repeatedly has recognized chilling effect as a third factor in

the prudential-ripeness analysis for cases presenting First Amendment claims. *See, e.g.*,

*Richardson*, 64 F.3d at 1500 (enumerating three elements for ripeness inquiry in First

Amendment context); *Stout*, 519 F.3d at 1116 (same); *see also McCann*, 43 F.4th at 1134

(incorporating chilled-speech inquiry conducted for standing analysis and clarifying that

*Richardson* treats "chilling effect" as a separate ripeness factor for First Amendment plaintiffs).

So, the court addresses the chilling effect on speech independently as a third factor, next.

When a plaintiff premises its constitutional challenge on vagueness or overbreadth, a

chilling effect on speech typically follows. *Stout*, 519 F.3d at 1118. Indeed, the mere "presence

of these claims weighs in favor of ripeness." *Id.* That's so because "'the arguable vagueness of

a statute greatly militates in favor of finding an otherwise premature controversy to be ripe.'" *Id.*

at 1117–18 (quoting *Richardson*, 64 F.3d at 1503). Our Circuit has reasoned that "a plaintiff

'should not have to risk prosecution, under a statute whose scope is unclear, before his challenge

to the constitutionality of that statute it ripe.'" *Id.* at 1118 (quoting *Richardson*, 64 F.3d at 1503).

And one court has observed that a plaintiff need only demonstrate "the chilling effect the

challenged law *may have* on First Amendment liberties"—apart from the merits of any

vagueness and overbreadth challenge. *Initiative & Referendum Inst. v. Walker*, 161 F. Supp. 2d

1307, 1312 (D. Utah 2001) (emphasis in original). "The requirement is only 'may have,' and

therefore it would be inappropriate to dismiss the case on ripeness grounds because one might

that find the Free Speech claim is not meritorious." *Id.* "In other words, although Plaintiffs

might lose their First Amendment claim on the merits, such [a claim] does preclude a challenge

on ripeness grounds." *Id.*

Here, KCF asserts both overbreadth and vagueness challenges to HB 2106. Doc. 1 at 41–

47 (Compl. ¶¶ 154–80). To be certain, in the context of denying a preliminary injunction, the

court concluded KCF is unlikely to succeed on the merits of those challenges. *See* Doc. 40 at

28–32. But as it pertains to the ripeness analysis, the presence of those claims tips this final

factor in favor of justiciability, irrespective of their merit. *See Walker*, 161 F. Supp. 2d at 1312. And even if it didn't, the other two factors—fitness for judicial review and hardship to the parties—both favor a finding that this case is ripe for review. And so, the court denies defendants' Motion to Dismiss (Doc. 28). One final loose end remains—defendants' alternative request.

## IV.    Holding the Case in Abeyance

Defendants alternatively ask the court to hold the case in abeyance "pending administrative action by the [KGEC] in reviewing and implementing the statutory requirements in HB 2106." Doc. 28 at 11. KCF opposes the request. Doc. 33 at 5. Defendants provide no reason for their bare-bones request. *See* Doc. 28 at 11; *see also Harley v. Potter*, No. CIV-08-148-M, 2010 WL 3294715, at *2 (W.D. Okla. Aug. 19, 2010) (refusing to hold assessment of costs in abeyance when plaintiff "sets forth absolutely no specific reason why the assessment of costs in this case should be held in abeyance"). And none of the three prudential ripeness factors support defendants' ripeness position. And defendants offer no other ground on which to stay the case. So, the court denies defendants' abeyance request, as well.

## V.    Conclusion

None of the prudential-ripeness factors applied in the First Amendment context—fitness for judicial review, hardship to the parties, and chilling effect—suggest that KCF's claims are unripe. So, the court denies defendants' Motion to Dismiss (Doc. 28). It also denies defendants' alternative request to suspend proceedings in this case pending administrative action by the KGEC. Defendants have furnished no reason supporting this request. Our court doesn't deprive parties of their right to present claims without good reason. Defendants here provided neither good reason nor any reason at all.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to

Dismiss (Doc. 28) is denied.

**IT IS SO ORDERED.**

**Dated this 4th day of February, 2026, at Kansas City, Kansas.**

                                        **s/ Daniel D. Crabtree**
                                        **Daniel D. Crabtree**
                                        **United States District Judge**